BURWELL et al., Appellants,

v.

AMERICAN EDWARDS LABORATORIES et al., Appellees.

[Cite as *Burwell v. American Edwards Labs.* (1989), 62 Ohio App.3d 73.]

Court of Appeals of Ohio,
Franklin County.

No. 88AP–30.

Decided March 9, 1989.

74

*Hamilton, Kramer, Myers & Cheek, James R. Gallagher* and *William L. Geary,* for appellants.

*Thompson, Hine & Flory, William H. Wallace* and *William R. Case,* for appellees.

YOUNG, Judge.

This matter is before this court upon the appeal of James F. Burwell et al., appellants, from a jury verdict rendered in favor of American Edwards Laboratories, Division of American Hospital Supply Corporation et al. ("Edwards"), appellees. Appellant James F. Burwell ("Burwell") underwent open heart surgery during which his natural heart valve was replaced with an artificial "porcine" valve, the Model 2625 IA ("model 2625" or "IA valve"), which was manufactured by appellees. Approximately five months after his operation, Burwell began to experience such physical difficulties as dizziness, lightheadedness and black-outs. After performing a catherization on Burwell, Burwell's doctor determined that a problem existed with regard to the flow of blood through Burwell's heart and that a second open heart surgery would be necessary. Consequently, surgery was performed on Burwell to remove the artificial valve and then replace it with another model 2625 IA valve, also manufactured by appellees.

Appellants thereafter filed a products liability action against appellees based on negligence, breach of express and implied warranties, strict liability, misrepresentation, and loss of consortium for Burwell's wife and children. The gravamen of appellants' complaint was that the IA valve which was initially implanted into Burwell's heart had been defectively manufactured by appellees. Additionally, punitive damages were sought on the grounds that appellees recklessly or intentionally concealed information of the defect.

Prior to trial, appellees filed a multi-branch motion *in limine*, seeking, *inter alia*, to exclude evidence relevant to discovery disputes which had occurred between the parties. The motion was granted in part, excluding the evidence.

Jury trial subsequently commenced before a referee, who presided by agreement of the parties. At the close of appellants' case-in-chief, appellees moved for directed verdict on all claims, which the court granted in part and denied in part. Following presentation of all the evidence, the trial court further directed a verdict in favor of appellees on the issue of punitive damages. Upon deliberation, the jury returned a verdict in favor of appellees. Furthermore, the jury responded unanimously in the negative to a special interrogatory submitted to them which asked: "Did the heart valve implanted in James Burwell in 1981 contain a stainless steel splice?"

Thereafter, the referee filed a report with the trial judge incorporating the jury verdict as well as the verdicts directed against appellants. No objections were filed to the report, which was adopted by the trial court by judgment entry dated April 6, 1987. Appellants subsequently filed a motion for a new

trial. The motion was denied, and this appeal ensued with the following eleven assignments of error set forth by appellants:

"I. The trial court committed prejudicial error when it granted defendant-appellee's motion for a directed verdict on the issue of punitive damages after it had previously ruled at the end of plaintiff-appellants' case that plaintiff-appellants had established a prima facie case which would have supported punitive damages.

"II. The trial court committed prejudicial error when it refused to instruct the jury that defendant-appellee could be held liable under a products liability cause of action if, in fact, the valve implanted in Jim Burwell spontaneously degenerated within five months of implantation as argued by defendant-appellees.

"III. The court erred in instructing the jury, in regard to the cause of action for strict liability and tort, that the strict liability instruction applied even though the seller had exercised all 'due care' in the preparation and sale of the product. The law, as developed by the Ohio Supreme Court, states that the strict liability principles apply even though the seller has exercised 'all possible' care in the preparation and sale of the product.

"IV. The trial court committed prejudicial error in ruling on plaintiff-appellants' motion for a new trial prior to the time that referee Roberts, who had sat as the presiding judge on the trial, rendered any report, opinion or other memorandum regarding the motion.

"V. The trial court erred in refusing to allow plaintiff-appellants, in pursuit of their claim that there had been an on-going practice by defendants to cover up known defects in their products, to introduce the evidence it had obtained, that, in a similar case, defendant-appellees has [sic] intentionally misled a court and jury.

"VI. The court erred in refusing to admit plaintiff's Exhibits 10, 11 and 12 into evidence which showed specifically that Dr. Estes, the president of the corporation, swore that there had never been a recall of the Model 2625 heart valve and did not retract that statement until after all the doctors had been deposed for trial.

"VII. The trial court committed prejudicial error in not admitting into evidence Exhibits 79, 80 and 81 in support of the claim that defendant-appellees engaged in a pattern and practice of recklessly disregarding the health and safety of persons receiving their valves.

"VIII. The trial court committed error in granting the motion in limine made by defendant-appellees thereby ordering that the jury was not to be advised of any conduct on the part of defendant-appellee in the discovery

process. The trial court further committed prejudicial error in refusing to admit into evidence plaintiff's Exhibits 9, 13 and 13A which document the continuing course of intentional concealment of the defective stainless steel valves from the public in general and from plaintiff-appellants in particular.

"IX. The trial court committed prejudicial error when it refused to instruct jury, pursuant to Ohio Jury Instruction 305.7 on failure to produce evidence.

"X. The verdict rendered by the jury was against the manifest weight of the evidence.

"XI. The trial court committed prejudicial error in refusing to instruct the jury relative to Ohio Jury Instruction 351.02 on failure to warn."

In their first assignment of error, appellants assert that the trial court erred in directing a verdict in favor of appellees on the issue of punitive damages in light of its prior ruling that appellants had established a prima facie case on that issue. The record demonstrates that, prior to trial and in response to appellees' motion *in limine,* the trial court ordered that no evidence of Edwards' financial net worth be presented to the jury until appellants had established a prima facie case entitling appellants to punitive damages. At the close of appellants' case, the trial court determined that a prima facie case had been established on the issue of gross negligence or willful and wanton, reckless disregard for the health and safety of others.

In ruling that a prima facie case had been presented, however, the trial court specifically reserved the question of whether a jury charge would be given on the issue of punitive damages. The court then granted appellees' motion for directed verdict as to punitive damages after all evidence had been presented, thereby effectively removing the issue from the jury. Civ.R. 50(A).

Although appellants set forth several grounds in support of their argument, we find it unnecessary to determine whether error was committed inasmuch as any error must be deemed nonprejudicial. The jury returned a verdict in favor of appellees. Thus, no compensatory damages were awarded to appellants. Absent concurrent compensatory damages, punitive damages are inappropriate and do not constitute a cause of action in and of themselves. *Bishop v. Grdina* (1985), 20 Ohio St.3d 26, 20 OBR 213, 485 N.E.2d 704; *Richard v. Hunter* (1949), 151 Ohio St. 185, 39 O.O. 24, 85 N.E.2d 109. Even if the issue had been submitted to the jury, given the verdict, no punitive damages would have been awarded. Therefore, any error which may have been committed by the trial court affected no substantial right of appellants, and must be considered harmless error. Civ.R. 61.

The first assignment of error is without merit.

For purposes of discussion, the second, third, ninth and eleventh assignments of error will be considered next. In each, appellants claim as error the failure of the trial court to give submitted jury instructions or to charge the jury as requested.

■ Appellants argue in the second assignment of error that the trial court should have charged the jury regarding the consumer-expectation test of product liability law. Appellants rely on the Ohio Supreme Court's opinion in *Leichtamer v. American Motors Corp.* (1981), 67 Ohio St.2d 456, 21 O.O.3d 285, 424 N.E.2d 568, as the applicable standard. Paragraph two of the syllabus of *Leichtamer* reads as follows:

"A product is in a defective condition unreasonably dangerous to the user or consumer if it is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner."

Specifically, appellants argue that although their theory of the case *sub judice* revolved around evidence that Burwell's valve contained stainless steel rather than elgiloy, the trial court should have instructed the jury that appellees could be found strictly liable in tort even if the valve underwent spontaneous degeneration as maintained by appellees. Spontaneous degeneration, under appellants' view, would signify that the valve was more dangerous than anticipated by an ordinary consumer.

■ We reject appellants' contentions for two reasons. First, the entire thrust of appellants' case was that the Edwards valve initially implanted in Burwell was composed of stainless steel, not of elgiloy as it should have been. Appellants seek to take advantage of the evidence presented by appellees that the porcine valve, being composed at least partially of biological features may have spontaneously degenerated once inside a human environment. While jury instructions are to be given as established by the evidence and the pleadings, *Baltimore & Ohio RR. Co. v. Lockwood* (1905), 72 Ohio St. 586, 74 N.E. 1071, paragraph one of the syllabus, we believe Civ.R. 51(A) essentially contemplates instructions given in conformance with presentation of each party's respective case. Moreover, although appellants' counsel advised the trial court that even if the valve failed due to spontaneous degeneration, evidence would be presented as to why appellees should nonetheless be held strictly liable, no such evidence was in fact then presented. See, also, *Simko v. Miller* (1938), 133 Ohio St. 345, 10 O.O. 535, 13 N.E.2d 914; *Marshall v. Gibson* (1985), 19 Ohio St.3d 10, 19 OBR 8, 482 N.E.2d 583.

Second, instead of charging the jury on the consumer expectation test as applicable to the evidence of spontaneous degeneration, the trial court instructed the jury on the law of unavoidably unsafe products. Fashioning a

charge from the language of 3 Ohio Jury Instructions ("OJI") (1986), Section 351.03(3), the trial court instructed that spontaneous degeneration of porcine valves, given the current state of medical knowledge, is a medically recognizable condition which cannot be avoided. The court stated further that, provided proper warning of the inherent risks were given, appellees could not be held strictly liable if in fact the valve implanted into Burwell underwent spontaneous degeneration.

The Supreme Court of Ohio articulated the standard to be applied in cases involving unavoidably unsafe products in *Seley v. G.D. Searle & Co.* (1981), 67 Ohio St.2d 192, 21 O.O.3d 121, 423 N.E.2d 831. The *Seley* case, citing 2 Restatement of the Law 2d, Torts (1967) 353–354, Section 402(A), defined "unavoidably unsafe products" as the following:

" ' * * * [P]roducts which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. * * * Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it *unreasonably* dangerous * * * The seller of such products * * * is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk.' " *Id.* at 196, 21 O.O.3d at 123, 423 N.E.2d at 831. (Emphasis in original.)

Based on the evidence presented, the trial court determined that the porcine valve belonged in the category of unavoidably unsafe products and instructed the jury accordingly. We find no error in the court's failure to give a *Leichtamer* jury instruction on the issue of spontaneous degeneration.

Appellants' second assignment of error is overruled.

■ Appellants' third assignment of error alleges error in the wording of the strict liability instruction given to the jury. Appellants had requested a charge which would hold appellees liable for a defective condition in the heart valve, " * * * even though the seller has exercised *all possible care* in the preparation and sale of the product * * *." (Emphasis added.) In the actual charge given to the jury, however, the trial court instructed that "[p]laintiff may recover * * * if the valve was defectively manufactured even though defendant has exercised *due care* in the manufacturing process. * * * " (Emphasis added.) Appellants argues that the erroneous charge would permit the jury to excuse appellees from strict liability if it found that appellees had exercised any degree of care greater than "due care," whereas the correct standard could place culpability on appellees for exercising the higher standard of "all possible care."

The standard proposed by appellants is derived from the law enunciated in *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267, paragraph two of the syllabus, wherein the court determined that a seller could be held liable for manufacturing defects although all possible care had been exercised. It would thus appear that "all possible care" constitutes the proper standard.

Nonetheless, while we would agree that under certain circumstances, the charge as given might unduly prejudice the requesting party, appellants herein have failed to demonstrate such prejudice. As set out in the facts, the jury found by way of special interrogatory that Burwell's valve did not contain stainless steel. Appellants' claim for strict liability in tort based on a manufacturing defect hinged on the theory that Burwell's valve did contain stainless steel. Given the answer to the interrogatory as well as the verdict rendered in favor of appellees on the issue, any error in the trial court's charge must be deemed harmless.

Moreover, a review of the entire charge given to the jury on the issue of strict liability convinces this court that reversal on the assignment of error is not warranted. The trial court thoroughly delineated the relevant law in instructing the jury. This court has stated that "[a] charge to the jury must be viewed in its totality, and if the law is clearly and fairly expressed, no reversal will be predicated upon error in a portion of the charge." *Yeager v. Riverside Methodist Hosp.* (1985), 24 Ohio App.3d 54, 24 OBR 107, 493 N.E.2d 559, paragraph one of the syllabus.

Accordingly, the third assignment of error is overruled.

In their ninth assignment of error, appellants assign as error the failure of the trial court to instruct the jury on failure to produce evidence. Appellants had requested an instruction based on former 3 OJI, Section 305.7, which dealt with inferences that could be drawn by the failure of a party to produce evidence on an issue upon which a reasonable person would expect that party to produce such evidence. Appellants maintain that the instruction was warranted in light of appellees' failure to produce evidence as to performance tests that may have been performed on the valves which were determined to contain stainless steel.

However, appellants misapprehend the application of the requested charge. The instructions as written would allow an inference to be drawn by a party's failure to produce evidence on a relevant issue. In the context of the instant case, appellants could have tried to apply the inference to appellees' alleged failure to provide evidence as to results of various performance tests which may have been conducted on the valves containing stainless steel.

Appellants, however, seek to take the inference one step further. Their reasoning would allow the inference to be made that failure to produce such evidence infers that such testing was in fact done, that the results were unfavorable, and that appellees therefore purposefully did not introduce the evidence at trial. Building the chain of inferences suggested by appellants is beyond the scope of former 3 OJI, Section 305.7. The instruction is furthermore unwarranted by the evidence. Uncontroverted evidence was presented which showed that no testing of the stainless steel valves was done. Dr. Estes, President of American Edwards Laboratories, was asked the following on cross-examination:

"Q. [Appellants' counsel] And the valves that had the elgiloy wire with the stainless steel crimp, did you test them on your pulse duplicator machine?

"A. [Dr. Estes] No, sir, we didn't.

"Q. The wire frames with elgiloy wire and the stainless steel crimps, did you test them on your accelerated tester machine to see what they would do?

"A. No, sir, we did not."

It is clear from the testimony above that while appellees may have indeed failed to test the valves containing stainless steel, they did not fail to produce evidence on that issue.

The ninth assignment of error is overruled.

■ Appellants, in the eleventh assignment of error, contend that the trial court committed prejudicial error in neglecting to instruct the jury under 3 OJI, Section 351.03, concerning appellees' duty to warn consumers of the risk that some of the valves contained stainless steel. Inasmuch as a jury charge was given nearly verbatim from that section, the argument is meritless. The substance of the charge is the only relevant matter, not whether the charge was given exactly as requested. *Jenkins v. Clark* (1982), 7 Ohio App.3d 93, 100, 7 OBR 124, 132, 454 N.E.2d 541, 550. The trial court did not err in instructing the jury as it did.

The eleventh assignment of error is not well-taken.

In their fourth assignment of error, appellants claim error by the trial court in overruling appellants' motion for a new trial. The record reflects that on March 20, 1987, the referee who had presided over the trial filed his report, pursuant to Civ.R. 53. The report was adopted by judgment entry entered by the court on April 6, 1987, and judgment was entered on behalf of the appellees.

On April 17, 1987, appellants timely filed a motion for a new trial, asserting three separate grounds in their memorandum in support: first, the trial court should have permitted appellants to introduce evidence concerning the appel-

lees' conduct during discovery; second, the trial court should not have directed a verdict for appellees on the issue of punitive damages; and third, appellants were prejudiced by appellees' introduction into evidence, contrary to the trial court's order, of information relating to three hundred thirty-three valves which had been shipped to various institutions from lots suspected of containing stainless steel. By decision and entry dated December 9, 1987, the trial court overruled the motion for a new trial.

The gravamen of the error alleged herein is that the trial court should not have ruled on appellants' motion for a new trial in the absence of a recommendation on the motion by the referee, who had presided over the case and thus had heard the testimony of the witnesses. Appellants maintain that the trial judge could not properly rule on a motion for a new trial which was based in part on the assertion that the judgment was against the manifest weight of the evidence, when the judge had had no prior involvement with the case.

It is important to note that although appellants stated in their motion that " * * * the judgment was not sustained by the weight of the evidence," they made no argument on that ground in the memorandum supporting the motion. As stated above, three arguments were set forth in the memorandum; in each argument, appellants stated the reasoning for the argument and summarized the relevant testimony. However, no argument was presented on behalf of the manifest weight issue, nor were relevant portions of the trial transcript submitted in support. The trial judge thus had no evidence upon which to grant appellants' motion for a new trial on the basis that the judgment was not sustained by the weight of the evidence.

Appellants had the duty to support the motion for new trial and failed to do so. Civ.R. 59. The fact that the trial judge did not participate in the trial insofar as listening to the testimony of witnesses is irrelevant, inasmuch as appellants failed to support the argument with affidavits, trial transcript or otherwise. Accordingly, to the extent that the motion was denied as not being against the manifest weight of the evidence, as argued in this assignment of error, no error was committed by the trial court.

The fourth assignment of error is overruled.

Appellants argue in their fifth, sixth, seventh and eighth assignments of error that the trial court improperly excluded evidence which appellants had sought to have admitted at trial. For the following reasons, we find that none of these assignments of error has merit.

As a general rule, a trial court has broad discretion in admitting or excluding evidence. *State v. Bayless* (1976), 48 Ohio St.2d 73, 2 O.O.3d 249, 357 N.E.2d 1035, vacated on other grounds (1978) 438 U.S. 911, 98 S.Ct. 3135,

57 L.Ed.2d 1155; *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 17 O.O.3d 98, 407 N.E.2d 490. The trial court's determination will not be reversed unless there has been a clear and prejudicial abuse of discretion. *Humphrey v. State* (1984), 14 Ohio App.3d 15, 14 OBR 18, 469 N.E.2d 981.

■ In their fifth assignment of error, appellants assert that the trial court should have admitted into evidence plaintiffs' exhibits 14 through 15 which consisted of certified copies of an action filed in the Richland County Court of Common Pleas, entitled *Knapp v. Edwards Laboratories* (Jan. 5, 1981), Richland C.P. No. 74–458, unreported, 1981 WL 6430, judgment entry. Appellants proffered the exhibits at trial as evidence of appellees' continuing pattern of concealment, although recognizing that the trial court had previously ordered that all such evidence would be excluded.

From what little information can be gleaned from the *Knapp* judgment entry which was proffered, it appears that a judgment in favor of Edwards Laboratories was vacated and plaintiffs were granted a new trial in that case based in part on the trial court's determination that Edwards had failed to timely disclose certain information to plaintiffs. The failure to disclose the information, according to the trial court, " * * * constituted misconduct and * * * deprived [plaintiffs] of a fair trial * * *." The judgment entry is dated January 5, 1981.

■ Appellants argue that they sought admission of the exhibits for two reasons: first, to impeach appellees' credibility, and second, to support the punitive damages claim which was predicated upon appellees' on-going practice of concealing material facts from patients. The trial court denied admission on the basis that the evidence was irrelevant and prejudicial. We do not find the determination to constitute a clear and prejudicial abuse of discretion. Evid.R. 401 defines relevant evidence as " * * * evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." By excluding the documents from the Richland County case, the trial court essentially determined that evidence of an entirely separate lawsuit in which appellees failed to disclose certain information does not tend to make more probable any of the facts alleged by appellants in the present case. Moreover, even if relevant, " * * * its probative value is substantially outweighed by the danger of unfair prejudice * * *." Evid.R. 403. It is not difficult to imagine that a lay jury, especially in a relatively complicated case, could more easily find a corporate defendant guilty on the basis that the corporate defendant had previously been found guilty of other wrongdoing.

The fifth assignment of error is overruled.

The trial court likewise excluded from evidence appellants' exhibits 9, 10, 11, 12, 13, and 13A, which appellants address in assignments of error number six and eight. All were proffered at trial as further evidence of appellees' continuing concealment of material information.

Exhibits 10, 11, and 12 are three letters written by appellees' counsel to appellants' counsel concerning appellants' question as to whether there had ever been a recall of the model 2625 valve. Although the initial answer was "no," appellees, in a later letter, exhibit 11, clarified the answers by advising appellants that five valves had been retrieved from specifically known lots after investigation of all lots of valves which could have been involved. In exhibit 12, appellees' counsel explained why the above information was not divulged to appellants prior to the time appellants deposed Dr. Cosgrove, an expert witness who testified at trial on behalf of appellees. The exhibits were excluded from admission as irrelevant and prejudicial. Given the trial court's discretion, we cannot say that their exclusion was erroneous.

Exhibits 9, 13 and 13A are various discovery documents propounded to appellees by appellants during the course of pretrial discovery. The specific evidence sought to be admitted in the documents pertains to appellants' request that appellees produce any evidence of defects in the model 2625 valve. Appellees had objected both to the interrogatory and the request for production of documents which referred to "defects" in the valve on the ground that "defect" required a legal conclusion. However, appellees agreed to provide information as to clinical complications.

We find no clear abuse of discretion by the trial court in refusing to admit these exhibits into evidence. Appellees appear to have interposed a valid objection to the question, as allowed under the Civil Rules. The burden then shifted to appellants to make a motion either compelling discovery or invoking sanctions. Civ.R. 34(B). Appellants' reliance on *Rogers v. Kazee* (1983), 10 Ohio App.3d 139, 10 OBR 190, 460 N.E.2d 1149, is misplaced inasmuch as defendant in that case neither responded to a request for production nor timely filed a motion for a protective order. Under the facts presented in this case, evidence of appellees' actions is irrelevant to the issues which appellants sought to prove.

Appellants also argue that the trial court erred in granting appellees' motion *in limine* which sought to exclude any mention of pretrial discovery proceedings between the parties. The above-mentioned exhibits were excluded based on this prior ruling. However, we can conceive of no reason why the discovery matters in this case should have been allowed to be presented to the jury. The Civil Rules adequately provide for sanctions or other remedies

when requests for discovery are not properly met, and there is thus no need to introduce evidence of discovery problems at trial.

Accordingly, the sixth and eighth assignments of error are overruled.

In the seventh assignment of error, appellants aver that the trial court improperly excluded exhibits 79, 80 and 81 from evidence. The exhibits are documents pertaining to problems associated with the Supra–Annular (S.A.) valve, a type of valve manufactured by Edwards other than the model implanted in Burwell. In ruling that the exhibits were inadmissible, the trial court found that the evidence was " * * * of no probative value * * * " and that it " * * * would be highly prejudicial. * * * " Additionally, exhibit 81 was excluded for the reason that no witness had discussed the evidence.

Again, this ruling by the trial court does not constitute a clear abuse of discretion. Although appellants were attempting to demonstrate that appellees risked the health and safety of their patients, the proffered evidence most likely would have prejudicially shifted the jury's attention away from appellees' conduct in regard to the Burwell valve and emphasized appellees' actions as to other products they manufactured.

The seventh assignment of error is overruled.

Finally, in their tenth assignment of error, appellants argue that the judgment was against the manifest weight of the evidence. Two primary arguments are advanced: first, appellants maintain that, based upon the evidence adduced at trial, Burwell's valve could have malfunctioned for only two reasons, either spontaneous degeneration or the substitution of a stainless steel crimp. Under either theory, appellants claim that judgment should have been in their favor. Second, appellants argue that the jury must have determined that the valve spontaneously degenerated, that such determination was clearly against the weight of the evidence, that the evidence proved that Burwell's valve contained stainless steel which caused the valve to lose structural integrity, and that judgment should accordingly have been rendered for appellants. Upon careful review of the voluminous record and transcript and numerous exhibits in this case, we find that the assignment of error should be overruled.

Dr. Estes, president of Edwards, who was called by appellants to testify as on cross-examination, testified that at about the same time that Burwell's valve was manufactured, stainless steel had been introduced into the manufacturing process at Edwards. Plaintiff's exhibit 1, entitled "Xenograft Splice Material Substitution Final Report," indicates that the stainless steel entered the plant between July and November 1980 and was discovered primarily through visual inspection. Testing was done on samples to determine the

exact type of stainless steel in question. From this testing, two vendors were identified as the only possible sources of the stainless steel.

As soon as the stainless steel was discovered to have become a part of the manufacturing process for IA valves, the type used in Burwell, all steps involved in production of the valves were terminated and a "stop shipment" was ordered. Although the reason given on the stop shipment order was to "evaluate product literature," Dr. Estes testified that the wording was not done so as to conceal the problem from the Food and Drug Administration.

Edwards further discovered that at the time the stainless steel was detected, three hundred thirty-seven valves which could possibly contain the metal had already been sold. However, upon investigation, it was determined that only two institutions had any chance of receiving valves with stainless steel; both institutions were notified and Edwards retrieved four valves which had been shipped to them.

Dr. Estes testified further that a meter known as an "induct tester" was devised at that time to specifically identify any parts containing stainless steel. He stated that all valves in the plant were tested, not merely those from suspect lots. On direct examination, Dr. Estes opined that Burwell's valve failed due to spontaneous degeneration.

Dr. Morris, appellants' engineering and physics expert, testified that, although a 1½ mm hole was found in Burwell's valve upon removal, the amount of regurgitation of blood backed into Burwell's heart was disproportionate to the small size of the hole. He then compared the symptoms experienced by Burwell with the symptoms experienced by recipients of two S.A. valves which had failed and opined that there were marked similarities. Finally, he concluded that, if it were determined that Burwell's valve contained stainless steel, then the stainless steel would have led to a loss of structural integrity, thus causing the valve to malfunction as it did. However, on cross-examination, Dr. Morris conceded that he would withdraw his conclusion if the valve had no stainless steel in it.

Dr. Cosgrove, a consultant for Edwards, testified on behalf of appellees that, in his opinion, Burwell's valve failed due to spontaneous degeneration. He defined "spontaneous degeneration" as " * * * the failure of a valve mechanism and in that I mean the tissue portion of the valve that opens and closes does not function properly without any associated problems. * * * It is simply the wear and tear on it causing this to fail." He stated that the condition of spontaneous degeneration, a well-recognized problem with porcine valves, is unavoidable. On cross-examination, he testified that only a fraction of one percent per year of the model 2625 valves undergo spontaneous degeneration within the first year.

Finally, Ronald Persinger, the Edwards' employee who had been in charge of testing the valves for stainless steel, testified that the induct testor was highly accurate given the great discrepancy between a reading of elgiloy, the proper metal, and a reading of stainless steel. He testified that if a valve were tested and determined to contain stainless steel, the serial number of the valve would be recorded and the valve was then discarded. Persinger further testified that, as evidenced by defendant's exhibit K–2, Burwell's valve, serial number AB 6284, had been tested and had been determined to not contain stainless steel. Although he admitted on cross-examination that nobody verified his results after testing, he had stated earlier that, in his opinion, there was no possibility that the test on Burwell's valve was performed incorrectly.

In sum, appellants introduced evidence that stainless steel, which was not the correct metal for porcine valves, had been erroneously introduced into the Edwards manufacturing process during the time Burwell's valve was manufactured. Further, valves of Burwell's type very rarely undergo spontaneous degeneration within only five months of implantation, and the facts surrounding the failure of Burwell's valve were remarkably similar to the failures of two S.A. valves.

Appellees, on the other hand, presented evidence that spontaneous degeneration is a well-recognized problem with porcine valves; that spontaneous degeneration is unavoidable; that all precautionary steps were taken immediately upon detection of discrepant stainless steel in the valve manufacturing process; that every valve in the plant was checked; and that Burwell's valve specifically was tested and was found to contain elgiloy rather than stainless steel.

It is well-settled that when a judgment is "supported by some competent, credible evidence going to all the essential elements of the case," such judgment will not be reversed by this court as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. The jury's finding that Burwell's valve did not contain stainless steel is clearly supported by competent credible evidence. Moreover, in light of our discussion in the second assignment of error, we find that appellants are not entitled to reversal of the judgment if the jury determined that Burwell's valve underwent spontaneous degeneration.

The tenth assignment of error is overruled.

Accordingly, for the foregoing reasons, appellants' eleven assignments of error are hereby overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

STRAUSBAUGH and GREY, JJ., concur.

LAWRENCE GREY, J., of the Fourth Appellate District, sitting by assignment.