**ESTATE OF BAXTER, Appellee,**

v.

**GRANGE MUTUAL CASUALTY COMPANY, Appellant.**

[Cite as *Estate of Baxter v. Grange Mut. Cas. Co.* (1992), 73 Ohio App.3d 512.]

Court of Appeals of Ohio,
Stark County.

No. CA–8339.

Decided Jan. 13, 1992.

*Allen Schulman, Jr.* and *Craig T. Conley,* for appellee.

*Richard S. Milligan,* for appellant.

———————

PUTMAN, Presiding Judge.

This is an appeal from a judgment of the Court of Common Pleas of Stark County, Ohio, entered upon a jury verdict in favor of plaintiff-appellee, Estate of Brett L. Baxter ("appellee"), and against defendant-appellant, Grange Mutual Casualty Company ("appellant"), on appellee's complaint for declaratory judgment and bad faith in the investigation and denial of insurance coverage. By this judgment, the trial court: (1) found that the limit of insurance coverage was $100,000; (2) awarded damages to appellee on the jury's verdict against appellant in the amount of $14,525 on appellee's claim for bad faith by appellant in its investigation and denial of insurance coverage; (3) awarded appellee $250,000 on the jury's finding that appellant is liable to appellee for punitive damages; and (4) awarded appellee $1,261.80 for the reasonable costs incurred by appellee when the trial court *sua sponte* ordered a mistrial because of remarks made by appellant's counsel during opening statements. By its entry of August 28, 1990, the trial court awarded appellee prejudgment interest on the insurance policy limits of $100,000 at the rate of 10 percent from November 7, 1988.

Appellant assigns ten assignments of error which are attached hereto and made a part of this opinion. (See Appendix.)

For the reasons stated below, we sustain appellant's ninth assignment of error. All other assignments of error are overruled.

At approximately 3:00 p.m. on August 15, 1988, while driving his sister's car northbound on Interstate 77 through Canton near the Fourth Street bridge, Brett L. Baxter was fatally injured when a two-and-a-half to three-foot piece of metal crashed through the car's windshield and fractured his skull. This piece of metal was later identified as part of a truck leaf spring. Another piece from that same spring was later found by the police in or near the northbound curb lane about forty feet north of the Fourth Street bridge.

At 4:20 p.m. that same afternoon, while driving in the passing lane, southbound on Interstate 77, directly north of the Fourth Street bridge, Valerie McNutt's car was struck by a two-and-a-half to three-foot long "dirty" metal bar that had come from the Fourth Street bridge. The bar hit the driver's side front fender and then broke the windshield. McNutt proceeded down Interstate 77 to pick her husband up from work. She then drove to the Canton Police Department to report the incident.

At the time of Brett Baxter's accident, his sister's car was covered by a policy of automobile insurance issued by appellant. The policy had uninsured motorist limits of liability of $50,000 per person and $100,000 per occurrence. On November 3, 1988, attorney Allen Schulman, Jr., representing the appellee, wrote to appellant, asserting an uninsured motorist claim under this policy. Attorney Schulman was requested to provide legal support for his proposition that a metal spring constitutes a "hit and run" vehicle under the terms of appellant's uninsured motorist coverage.[1] Schulman agreed to do so, and on February 28, 1989, he wrote to Charles Thompson, claims representative for the appellant. Schulman provided appellant with the applicable case law and demanded settlement of the claim. On March 17, 1989, appellant denied the claim. This lawsuit was then filed.

During opening statements, counsel for appellant objected to a comment made by appellee's counsel. At a sidebar, the trial court instructed counsel to avoid specific references in their opening statements to the incident involving Valerie McNutt. During his opening statement, counsel for the appellant told the jury that, "[a]t 5:00 o'clock is there another incident at that Fourth Street bridge which you're going to hear about—[*sic*]." The trial court then declared a mistrial and excused the jury.

A new trial was commenced on July 2, 1990. In the interim, counsel for appellee filed a motion *in limine* to exclude the testimony of Valerie McNutt and any reference to the "McNutt incident." Prior to commencement of trial, the trial court granted this motion.

We turn now to appellant's assignments of error.

## I

■ By its first assignment of error, appellant argues that the jury verdict finding a right to uninsured motorist coverage is contrary to law because

---

**1.** The insurance policy at issue specifically provides that an uninsured motor vehicle can be a hit-and-run motor vehicle. The policy defines a hit-and-run motor vehicle as:

"'hit-and-run motor vehicle' means a motor vehicle which causes bodily injury to an insured arising out of physical contact of such motor vehicle with the insured or with a motor vehicle which the insured is occupying at the time of the accident, provided: (1) there cannot be ascertained the identity of either the operator or the owner of such 'hit-and-run motor vehicle'; (2) the insured or someone on his behalf shall have reported the accident within 24 hours to a police, peace or judicial officer or to the Commissioner of Motor Vehicles, and shall have filed with the Company within 30 days thereafter a statement under oath that the insured or his legal representative has a cause or causes of action arising out of such accident or damages against a person or persons whose identity is unascertainable, and setting forth the facts in support thereof; and (3) at the Company's request, the insured or his legal representative makes available for inspection, the motor vehicle which the insured was occupying at the time of the accident."

there was no "physical contact" between an unidentified motor vehicle and Brett Baxter's motor vehicle as required by the Ohio Supreme Court in *Travelers Indemnity Co. v. Reddick* (1974), 37 Ohio St.2d 119, 66 O.O.2d 259, 308 N.E.2d 454, and its progeny.[2] Appellant also argues that the trial court erred in instructing the jury consistent with the reasoning in *Greer v. Cincinnati Ins. Co.* (June 28, 1988), Franklin App. No. 87AP–1232, unreported, 1988 WL 70507.

In *Greer*, the plaintiff was injured when the automobile he was operating was struck by a cylindrical metal pipe about nine inches in length that was either part of the load being transported by a truck or part of the truck itself. The pipe fell from the truck, struck the highway pavement, flew into the air, and bounced through the windshield of the plaintiff's vehicle, striking him in the head and injuring him severely. The truck did not stop, and the owner and/or operator was never identified.

In *Greer*, the issue was whether the truck from which the metal pipe fell was a "hit-and-run" vehicle within the meaning of the defendant's insurance policy. In holding for the plaintiff, the Court of Appeals for Franklin County discussed and distinguished the facts of *Greer* from *Reddick* and its progeny.

We find the *Greer* opinion persuasive and adopt its reasoning. In doing so, we are also in agreement with the Fourth District Court of Appeals in *Atwood v. State Farm Mut. Ins. Co.* (1990), 68 Ohio App.3d 179, 587 N.E.2d 936. The court of appeals in *Atwood* also approved and adopted the *Greer* decision, and found coverage where limestone fell off a truck striking the insured's vehicle.

Accordingly, appellant's first assignment of error is overruled.

## II and V

By its second and fifth assignments of error, the appellant argues that the trial court committed prejudicial error in excluding Valerie's McNutt's testimony and a Repository newspaper article that described the Baxter accident and mentioned the McNutt incident that occurred one hour and twenty minutes later.

A trial court's decision to admit or exclude evidence will not be reversed unless there is a clear and prejudicial abuse of discretion. *Burwell v. American Edwards Labs.* (1989), 62 Ohio App.3d 73, 83–84, 574 N.E.2d 1094, 1100–1101. Additionally, "[a] trial court has discretion to determine whether contested events or objects are sufficiently similar to other events or

---

2. *Yurista v. Nationwide Mut. Ins. Co.* (1985), 18 Ohio St.3d 326, 18 OBR 370, 481 N.E.2d 584, and *State Auto. Mut. Ins. Co. v. Rowe* (1986), 28 Ohio St.3d 143, 28 OBR 238, 502 N.E.2d 1008.

objects that evidence about the other events or objects has probative value. * * *" *Babb v. Ford Motor Co.* (1987), 41 Ohio App.3d 174, 535 N.E.2d 676, paragraph two of the syllabus.

▮▮▮  Upon careful review of the entire record in this case, we conclude that the trial court did not abuse its discretion in excluding Valerie McNutt's testimony and the Repository newspaper article, notwithstanding it should have listened to the proffered testimony before ruling.  Any connection between the McNutt incident and the Baxter incident was so tenuous that they are insufficiently connected.  McNutt's proffer fails to establish a sufficient relationship between the two incidents so as to demonstrate the relevance of McNutt's testimony.

Accordingly, appellant's second and fifth assignments of error are overruled.

### III and IV

By its third and fourth assignments of error, appellant argues that the trial court erred in denying its motion for a directed verdict on appellee's claim of bad faith.  Appellant contends that appellee failed to prove any actual damages resulting from bad faith and the evidence was insufficient to support the jury's finding of bad faith.

Civ.R. 50(A)(4) provides:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

▮▮▮▮  In addition to Civ.R. 50(A), it is well established that the court must neither consider the weight of the evidence nor the credibility of the witnesses in disposing of a directed verdict.  *Durham v. Warner Elevator Mfg. Co.* (1956), 166 Ohio St. 31, 1 O.O.2d 181, 139 N.E.2d 10.  If there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied.  *Hawkins v. Ivy* (1977), 50 Ohio St.2d 114, 115, 4 O.O.3d 243, 244, 363 N.E.2d 367, 368.

Having thoroughly reviewed the record in this case, we conclude that appellee presented sufficient evidence relating to the issue of bad faith to permit reasonable minds to reach different conclusions on that issue.  As

such, the trial court was correct in denying appellant's motion for a directed verdict on the claim of bad faith.

■ We likewise conclude that the jury's finding of bad faith was not against the manifest weight of the evidence. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. Paragraph one of the syllabus in *Staff Builders, Inc. v. Armstrong* (1988), 37 Ohio St.3d 298, 525 N.E.2d 783, provides:

"An insurer has a duty to act in good faith in the processing and payment of the claims of its insured. A breach of this duty will give rise to a cause of action in tort against the insurer irrespective of any liability arising from breach of contract. (*Hoskins v. Aetna Life Ins. Co.* [1983], 6 Ohio St.3d 272, 6 OBR 337, 452 N.E.2d 1315, approved and followed.)"

The court in *Staff Builders* also stated at 37 Ohio St.3d at 303, 525 N.E.2d at 788, "It is our further determination that an insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor."

In the case *sub judice*, there appears sufficient evidence to support the jury's finding of bad faith. In light of all the evidence within appellant's possession (Schulman's legal memorandum; the accident report; the coroner's determination on the death certificate that Brett Baxter's death was "caused by an accident"; and a letter from Sgt. Kosht) the jury could reasonably conclude that appellant's determination was not made in good faith.

Our review of the record also indicates that there was competent, credible evidence to support the jury's finding of actual damages resulting from appellant's bad faith. Upon hearing the evidence, it was within the jury's province to weigh it and determine what amount would properly compensate the appellee for the damages incurred due to appellant's conduct. Jury Interrogatory Nos. 2 and 3 put this issue of actual damages squarely before the jury.[3] No objections were made to any of the jury interrogatories.

---

3. Answered by the jurors in the affirmative, these interrogatories provided:
"Interrogatory No. 2
"Did the plaintiff prove by a preponderance of the evidence that in denying coverage, the defendant, Grange Mutual Casualty Company, acted with dishonest purpose, conscious wrongdoing, in breach of a known duty through some ulterior motive partaking of the nature of the fraud or with an actual intent to mislead or deceive another?

Regarding damages for appellant's bad faith, the trial court instructed the jury as follows:

"A person who seeks to recover for damages must prove not only that the other party breached an obligation, but also that such breach was a proximate cause of damage.

"Proximate cause is an act or failure to act which in the natural and continuous sequence directly produces the damages and without which it would not have occurred.

"Cause occurs when the damage is the natural and foreseeable result of the act or failure to act.

"The general rule for the measurement of damages is that the party's [whose] contract has been broken without his fault is entitled to fair and reasonable compensation for his loss.

"If you find that the defendant breached its duty of good faith and fair dealing you would determine what damages the plaintiff has established by a preponderance of the evidence.

"These damages include the economic losses incurred by the plaintiff as a result of any such breach and include the expenses incurred, the attorney's fees incurred as a proximate result of any breach by the defendant.

"If you find there is coverage under the contract you will not determine the amount owing under the contract. You will limit your damages to those shown by a preponderance of the evidence to have proximately resulted from the breach of good faith."

No objection was made to this instruction.

Accordingly, we conclude that the evidence and the law support the jury's award of compensatory damages, and appellant's third and fourth assignments of error are overruled.

### VI and VII

■ By its sixth and seventh assignments of error, appellant argues that the trial court erred in awarding appellee punitive damages. Appellant contends that appellee failed to prove by clear and convincing evidence that appellant acted with actual malice.

Paragraph two of the syllabus in *Staff Builders, supra,* states:

---

"Interrogatory No. 3
"If your answer to Interrogatory No. 2 is yes, did the breach by defendant, Grange Mutual Casualty Company, of the covenant of good faith cause actual damage separate and apart from whatever damages the plaintiff may be entitled to recover under the uninsured motorist coverage of the policy?"

"Punitive damages may be recovered against an insurer that breaches its duty of good faith in refusing to pay a claim of its insured upon proof of actual malice, fraud or insult on the part of the insurer. (*Hoskins v. Aetna Life Ins. Co.* [1983], 6 Ohio St.3d 272, 6 OBR 337, 452 N.E.2d 1315, approved and followed.)"

The trial court instructed the jury as follows regarding punitive damages:

"You will also decide whether the defendant shall be liable for punitive damages in addition to any other damages that you award to the plaintiff.

"The purpose of the punitive damages are [*sic*] to punish the offending party and to make the offending party an example, to discourage others from similar conduct.

"If you determine that the defendant is liable for punitive damages, the Court will determine the amount of punitive damages to be awarded.

"You may decide that the defendant is liable for punitive damages if you find by clear and convincing evidence that the defendant's act or failure to act demonstrate[s] malice, aggravating or egregious fraud, oppression or insult and the plaintiff has presented proof of the actual damage that resulted from those acts or failure to act of an employee of the defendant.

"Malice includes that state of mind under which a person's conduct is characterized by hatred, ill will or spirit of revenge or a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm.

"Probability means likelihood and great probability means a considerable or sizable likelihood.

"Substantial means major, of real importance, of great significance, not trivial or small.

"Fraud is aggravated if it is accompanied by the existence of malice or ill will.

"Fraud is egregious if the fraudulent wrongdoing is particularly gross.

"Oppression is an act or series of acts that wrongfully subject the victim or victims to harm or hardship by the unjust or cruel use of force or authority.

"Insult means any act or remark that is consciously, deliberately or intentionally scornful or humiliating.

"To be clear and convincing the evidence must have more than simply a greater weight than the evidence opposed to it and must produce in your minds a firm belief or conviction about the facts to be proved."

Thus, the jury was well aware of the proper standard for the imposition of punitive damages. In response to Interrogatory No. 3 (see fn. 3), the jury

found that appellant caused actual damage separate and apart from whatever damages appellee was entitled to recover under the insurance policy. A majority of the jurors responded in the affirmative to Interrogatory No. 4, which states:

"Did the plaintiff prove by clear and convincing evidence that the defendant's denial of coverage to the plaintiff demonstrates actual malice characterized by hatred or ill will, a spirit of revenge, retaliation or determination of one to vent his feelings upon another, or demonstrates a conscious disregard for the rights of other persons that has a great probability of causing substantial harm?"

Having responded in the affirmative to Interrogatory Nos. 3 and 4, the jury then concluded that appellee suffered actual damages in the sum of $14,525 and that appellant was further liable for punitive damages. This court will not invade the province of a properly instructed jury that reached a reasonable decision based upon the manifest weight of the evidence presented to it.

Appellant also contends that the trial court erred in awarding punitive damages when the jury verdict entitling appellee to punitive damages resulted from the jury's confusion regarding the requisite conduct necessary to support a bad faith claim and the requisite conduct necessary to support a punitive damages award.

The jury's initial response to Interrogatory No. 4 was in the negative. The trial court then resubmitted Interrogatory No. 4 and instructed the jurors to return for further deliberations. Subsequently, the jury returned to the courtroom, six jurors having changed their answer to Interrogatory No. 4 to "yes."

"Where a jury's answers to one or more special interrogatories are irreconcilable with the general verdict, the choice of whether to enter judgment in accord with the answers to interrogatories and against the general verdict, resubmit the case to the jury, or order a new trial lies within the sound discretion of the trial court." *Tasin v. SIFCO Industries, Inc.* (1990), 50 Ohio St.3d 102, 553 N.E.2d 257.

Finally, it should be noted that appellant never objected to any of the jury instructions, interrogatories, or verdict forms given to the jury by the trial court.

Accordingly, appellant's sixth and seventh assignments of error are overruled.

## VIII

■ Appellant argues by its eighth assignment of error that the award of punitive damages violated the Due Process Clause of the Fourteenth Amend-

ment and the Excessive Fines Clause of the Eight Amendment to the United States Constitution. We find this argument to be without merit. The United States Supreme Court has recently addressed this issue in *Pacific Mut. Life Ins. Co. v. Haslip* (1991), 499 U.S. ——, 111 S.Ct. 1032, 113 L.Ed.2d 1. In that case, the Supreme Court concluded that a punitive damages award of more than four times the amount of compensatory damages and more than two hundred times the out-of-pocket expenses of the plaintiff was constitutional.

Accordingly, appellant's eighth assignment of error is overruled.

## IX

■ Appellant argues by its ninth assignment of error that the trial court erred in awarding prejudgment interest on the per accident limits of the insurance policy. We agree. No money judgment was rendered upon which the prejudgment interest could be calculated. The trial court's declaration that the per accident limits of $100,000 applied is not the same as the trial court's judgment in favor of one party and against the other in the specific amount of $100,000. If this were the case, an actual judgment awarding a sum certain would be the figure upon which prejudgment interest could be calculated. However, this is a declaratory judgment action to determine policy coverage and until the amount of coverage is arbitrated and confirmed, an award of prejudgment interest on $100,000 is inappropriate. No money judgment having been awarded, we find that the trial court erred in calculating prejudgment interest on the amount it declared as the per accident limits of the insurance policy. Lest our holding on this assignment of error be misinterpreted, we do *not* find the trial court's decision to award prejudgment interest an abuse of its discretion. It is merely the premature calculation of the amount thereof where the claim is as yet unliquidated that we find to be reversible error.

Accordingly, appellant's ninth assignment of error is sustained.

## X

We overrule this assignment of error based upon our disposition of the second and fifth assignments of error. The trial court did not abuse its discretion in awarding appellee expert costs that arose when the trial court *sua sponte* ordered a mistrial because of remarks made by appellant's counsel in his opening statement concerning the testimony of Valerie McNutt.

Accordingly, appellant's tenth assignment of error is overruled.

For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed in all respects except the August 28, 1990,

order awarding prejudgment interest to appellee based upon the trial court's declaration that the policy limits are $100,000. That portion of the judgment is reversed.

*Judgment affirmed in part*
*and reversed in part.*

SMART and HOFFMAN, JJ., concur.

APPENDIX

Assignments of Error

"I.    A metal truck spring that strikes an insured's vehicle does not constitute a physical contact between an unidentified motor vehicle and the insured's vehicle as is required under the policy language and supreme court precedent. The jury verdict finding a right to uninsured motorist coverage is contrary to law.

"II.    The trial court committed prejudicial error in excluding the testimony of Valerie McNutt whose car was struck by a two and a half to three foot steel bar coming from the fourth street bridge one hour and twenty minutes after Brett Baxter was struck.

"III. The trial court erred in denying Grange's motion for a directed verdict on the claim of bad faith. As a matter of law, the evidence was insufficient to support the jury's finding that the appellant's investigation of the insured's claim was in bad faith.

"IV. The failure of the plaintiff to prove any actual damages resulting from bad faith entitle the defendant to a directed verdict on the bad faith claim.

"V.    The trial court committed prejudicial error in excluding from evidence the content of a repository newspaper article obtained by the defendant as part of its investigation of the uninsured motorist claim and used by it in making a decision to deny coverage.

"VI. The trial court erred in awarding punitive damages when the appellee (1) did not establish any actual damage due to Grange's tortious conduct and (2) failed to prove by clear and convincing evidence that Grange acted with actual malice.

"VII. The trial court erred in awarding punitive damages, for the jury verdict entitling the appellee to punitive damages resulted from the jury's confusion over distinguishing between the requisite conduct necessary to support a bad faith claim and the conduct necessary to support a punitive damage award.

"VIII.    The award of punitive damages violated the due process clause of the Fourteenth Amendment and the excessive fines clause of the Eighth Amendment of the United States Constitution.

"IX. The trial court erred in awarding prejudgment damages on the per accident limits of the policy in addition to awarding punitive damages. No proof was presented as to the damages resulting from the insured's death; nor was there a money judgment rendered upon which the prejudgment interest could be calculated.

"X. The trial court erred in awarding the appellee expert costs that arose when the court *sua sponte* ordered a mistrial because of remarks that appellant's counsel made during opening statement, which were within the scope of what the court had informed the appellant would be permissible."