**KUNKLE, Plaintiff-Appellant, v. JAFFE, Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20331—Decided October 7, 1946.

Burgess, Fulton & Fullmer, Cleveland, for Plaintiff-Appellant.

J. Albert Lowell, Cleveland, for Defendant-Appellee.

## OPINION

By MORGAN, J.

The plaintiff appellant brought this action in the common pleas court to recover $2500.00 as a real estate commission from the defendant appellee. The case was tried to the court, a jury having been waived.

The plaintiff offered evidence to the effect that the defendant listed with plaintiff for sale the premises at 1457 East 40th Street, Cleveland, Ohio, where defendant was engaged in business and that the plaintiff on or about June 6, 1943, produced as a purchaser the Cleveland Gas Meter Company, which company offered to purchase the premises for $70,000.00; that the defendant agreed to sell at that price and to have his attorney prepare the necessary legal papers to consummate the

deal, which he failed to do. There was evidence that the Cleveland Gas Meter Company was ready, willing and able to pay $70,000.00 in cash for the premises.

The defendant claimed,

(1) That the offer of the Cleveland Gas Meter Company for the premises was conditional on the ability of the company to sell the property then occupied by it for its own business, to The Thompson Products Company, which deal was not closed until afterwards.

(2) That the defendant's offer to sell the premises for $70,000.00 was conditional on the plaintiff finding suitable quarters elsewhere for the business conducted by the defendant on the premises and that the plaintiff failed to find such quarters satisfactory to the defendant. The evidence was in conflict on this point.

The evidence also showed that as soon as the Cleveland Gas Meter Company had sold its own property to The Thompson Products Company the meter company through the agency of the plaintiff purchased other premises for its business.

The case was tried and submitted to the court on June 13, 1945. Thereafter, on Sept. 26, 1945, the court on its own motion reopened the case for the purpose of taking additional testimony and a stipulation of the parties was received in evidence over the objection of the defendant.

It was stipulated that Mr. Kunkle, if called for further testimony, would testify that in the latter part of June, 1943, a five-story factory building containing some 40,000 square feet, owned by the New York Life Insurance Company and located on E. 65th St. between Euclid and Carnegie Avenues, was listed for sale with the plaintiff. The said building was purchased on or about July 7, 1943 by the Cleveland Gas Meter Company through the efforts of the plaintiff, for the sum of $45,000.00, and the New York Life Insurance Company paid the plaintiff a commission amounting to $1750.00.

It was also stipulated that in the fore-part of August, 1943, a two-story brick building containing some 22,000 square feet located at 2009 Rockwell Avenue owned by D. D. Wessels Company, was listed for sale with the plaintiff and that the said property was purchased by the meter company for about $30,000.00 and a commission of $1300.00 was paid the plaintiff for his services as agent. That in the latter part of September, 1943, or the first part of October, 1943, a frame dwelling house located immediately adjacent to the property at 2009 Rockwell Avenue, was listed for sale with plaintiff and that said property was purchased by the meter company and plaintiff was paid for his services a commission of $400.00. The

total of the commissions paid plaintiff for the sale of the three properties amounted to $3450.00.

Later, on November 9, 1945, the case was again reopened for the purpose of taking the additional testimony of Wm. N. Knight, Jr., and it was stipulated that Mr. Knight, if called for further testimony, would testify that the New York Life Insurance Company building was purchased by the meter company with the intention of using the first two floors thereof for carrying on the business of the meter company; that the D. D. Wessels Company building was purchased by the meter company for the purpose of carrying on its business "since it better suited their purposes than the New York Life Insurance Company building previously purchased." That the motor company sold the New York Life Insurance Company building about a year later but plaintiff appellant had nothing to do with the sale.

The plaintiff again objected to the ruling of the court reopening the case and excepted to the competency of the additional evidence received.

Later the court made a finding for defendant and submitted to the attorneys in the case a short "memorandum opinion." In this memorandum opinion the court made no finding on the issues and the evidence introduced before the case was reopened. There is nothing in the memorandum opinion to indicate that the court would have found for defendant if the case had not been reopened. On the contrary, the court in a statement indicated that on at least one issue of fact it would have held against the defendant.

The plaintiff claimed that the meter company had agreed with the defendant seller on terms of sale and that the latter agreed to have his attorneys prepare a contract of sale. The defendant denied that he had agreed to prepare such a contract or to have it prepared. The trial court in the memorandum opinion appears to hold with the plaintiff on that issue of fact. The court stated:

"When the latter (that is the defendant) failed to prepare a contract of sale as he agreed to do, plaintiff sold his prospect two other buildings and thereby received more commissions than if the deal with Jaffe had been consummated."

The reasons given by the court in its memorandum opinion for finding for the defendant are as follows:

"In view of the peculiar circumstances disclosed by the evidence, it is highly improbable that the plaintiff would have

sold the other buildings to the meter company except for Jaffe's default. Generally the measure of damages for breach of contract is the loss sustained by reason of the breach. Plaintiff suffered no loss. In fact defendant's breach was a fortunate circumstance that enabled plaintiff to earn $3400.00 in commissions, instead of the $2500.00 which he claims from defendant. The purpose of suits of this character is to redress wrongs by compensating for the loss or damage sustained. To permit recovery by plaintiff against Jaffe, would place the former in a better position than he would have been had no wrong been done. This would contravene one of the fundamental principles of the law of damages. As stated in **13 O. Jur. page 71, Sec. 12:**

'In no case should the injured party be placed in a better position than he would have been had not the wrong been done.' "

The statement by the trial court that "it is highly improbable that the plaintiff would have sold the other buildings to the meter company except for Jaffe's default" is purely speculative. Likewise, the statement in the memorandum opinion that if the plaintiff is permitted to recover against the defendant he would be placed "in a better position than he would have been had no wrong been done" is equally speculative.

The meter company was evidently in a strong cash position and after purchasing a plant for its own use from the New York Life Insurance Company it found another plant, one owned by the Wessels Company which it liked better for its purpose, and it bought the Wessels Company plant while still remaining owner of the premises purchased from the insurance company. While still the owner of the said two properties the meter company again purchased a third property. There is no sound basis for the claim that if the meter company had purchased defendant's property it would not have pur-

chased one or all of the three properties it afterwards purchased.

Furthermore, if the plaintiff had not negotiated a sale to the meter company of any one of the three properties it afterwards purchased, who can say that plaintiff may not have been able to find a wholly different purchaser for these properties?

If the meter company had purchased defendant's property might it not have been interested in buying as an investment any one or all of the three properties it afterwards purchased?

This is not the case of a personal service or employment contract where on a wrongful discharge the employee is required to seek other employment to mitigate his damages. The plaintiff was under no obligation whatsoever to mitigate his claim for damages for breach of contract against the defendant by seeking to make sales of other properties to the meter company.

In the case of Olds et al vs Construction Co. 177 Mass. 41, the court held: (syllabus)

"If B who has contracted with C, breaks his contract with a subcontractor, A, by which A has agreed to do certain work for C, at a specified sum, and A then makes a new contract with C, to complete the work called for by A's contract with B, and also to do certain other work for a round sum agreed upon between them, in an action by A against B, for breach of the original contract, A is not required to allow the amount of the profits of the last contract with C, in diminution of the damages to which he would otherwise have been entitled."

In the above case, if B had not broken his contract with sub-contractor A, the latter would not have been able to make the new contract with C, to complete the work called for by A's contract with B, so that if the principle of law announced in the memorandum opinion of the trial court is correct, the

amount of the recovery by A against B for the latter's breach of contract should have been diminished by the profits made by A on his subsequent contract with C. The Massachusetts Court however, held otherwise.

In the case of Grinnell Company, Inc., vs Voorhees et al, 1 Fed. 2d, 693, 3rd Cir. Ct. of Appeals, it appeared that the Grinnell Company entered into a contract with the Willys Corporation whereby it agreed to equip the property of the Willys Corporation at Elizabeth, N. J. with a system of Grinnell fire extinguisher apparatus. The Willys Corporation became insolvent, however, and thereby was obliged to breach its contract with the Grinnell Company. The Durant Motor Company purchased the Willys Corporation property and then made a contract with the Grinnell Company to install and complete the fire extinguisher system which had been the subject matter of the Grinnell Company's contract with the Willys Corporation.

The Grinnell Company made a claim against the receivers of Willys Corporation for the profits which it would have made on its contract with Willys Corporation. There was "no serious dispute as to the amount of the profits claimed" so that the question presented to the court was one of law only. The District Court disallowed the claim. The Circuit Court of Appeals reversed the District Court and held that it was "erroneous to apply the profits derived from the contract with the Durant Company to the diminution of damages caused by the breach of Willys Corporation. * * * The claim of the plaintiff accrues at once and the law does not inquire into later events."

The above cases, Olds vs Construction Co., and Grinnell Co. vs Voorhees, were much stronger cases for allowing damages for breach of contract to be diminished by the profits made on a second contract than in the instant case, because in both of those cases the second contract was to complete the work provided for in the first contract and the making of the

second contract would have been impossible if the first contract had not been breached. Those elements do not exist in the instant case.

Counsel for defendant appellee has cited the case of Pump Co. vs. Llera, 205 Fed. Rep. 209, and claims that case to be an authority in its favor. In that case the plaintiff procured a contract for defendant for the sale of a pump to be built according to definite specifications to be installed in a New York building under an agreement that would net the plaintiff a commission of $3950.00. Defendant breached the contract and plaintiff then procured the acceptance of the contract by another concern which constructed the same pump according to the same specifications and paid plaintiff $3300.00 commission. The court held (paragraph 6 of syllabus):

"Since the article sold was one for a special use, to be built according to specific specifications and there was but one sale, evidence of the commission actually received therefrom was admissible in mitigation of the damages recoverable by plaintiff from defendant, under the rule that plaintiff was bound to minimize his loss as far as possible."

The court, however, said: (page 214)

"It is quite true that in the ordinary case of a broker or salesman, who loses the commission on a sale because the vendor, his principal, refuses to proceed, his subsequent sales for other principals would be immaterial; but in the usual case, and in every reported case of this character, which we find, (Sutherland on Damages, 3d Ed. Vol 1, §153) the sales were of a commodity having a general market, or at least of such an article and under such circumstances that the broker might have made both the first and second sales. Here, as we interpret the offers, there is no room for the possibility that Llera could have carried through both of these sales."

It is clear that real estate is "a commodity having a general market" and it was possible for plaintiff to have made the sale of defendant's property to the meter company and also sales of the other properties later purchased by the meter company either to the meter company or to some third party. In the case of Pump Co. vs Llera, there could have been but one sale of a pump built for a certain building according to definite specifications. For this reason it is our opinion that Pump Company vs Llera is not an authority in the instant case.

Another reason for holding that it was error to admit evidence in mitigation or to diminish plaintiff's recovery in this case is that this is not, in reality, an action for damages for breach of contract. It is an action to recover an earned commission, payment of which has been refused. If the plaintiff is able to show that he produced a purchaser ready, willing and able to buy defendant's property at the price and on the terms agreed upon, the plaintiff's right to a commission became fixed at the time he produced such a purchaser on defendant's terms. The plaintiff thereby became entitled to the full commission or his claim must fail entirely. In the language used by the court in Grinnell Co. vs. Voorhees et al., supra, "The claim of the plaintiff accrues at once and the law does not inquire into later events."

On full consideration of the case, we have come to the conclusion that the evidence in mitigation of damages introduced after the case was reopened was incompetent and prejudicial and for the admission of this evidence the case is reversed and remanded for further proceedings according to law.

SKEEL, PJ, HURD, J, concur.