CHANDLER, APPELLANT, *v.* GENERAL MOTORS
ACCEPTANCE CORPORATION, APPELLEE.

(No. C-780840 — Decided March 19, 1980.)

*White, Getgey & Meyer Co., L.P.A.,* and *Mr. P. Michael
McCaulay,* for appellant.

*Messrs. Steer, Strauss, White & Tobias, Mr. R. Guy Taft*
and *Mr. Gordon M. Strauss,* for appellee.

BETTMAN, P. J.  This case arose as a result of the pur-
chase of an automobile by plaintiff-appellant, William
Chandler, from Jake Sweeney Chevrolet, Inc. (Sweeney). The
purchase was financed by defendant-appellee, General Motors

Acceptance Corporation (GMAC). Chandler brought an action in the Court of Common Pleas of Hamilton County alleging breach of contract and malicious repossession of the automobile by GMAC. GMAC filed a counterclaim seeking judgment for the deficiency balance on Chandler's obligation after the sale of the repossessed automobile. Chandler's suit against GMAC was dismissed on GMAC's motion for summary judgment. This dismissal was not assigned as error by the appellant, Chandler.

After GMAC's motion for summary judgment on Chandler's claim had been granted, GMAC filed a motion for summary judgment on its counterclaim. This too was granted and Chandler assigns the granting of this motion for summary judgment on GMAC's counterclaim as error. The thrust of appellant's argument is that the motion for summary judgment should not have been granted because there was a genuine issue of fact as to whether GMAC had failed to carry out its duty to minimize its damages.

GMAC argues that a failure to minimize damages is an affirmative defense under Civ. R. 8(C), and, since Chandler failed to plead this defense in his answer to GMAC's counterclaim, the defense was waived under Civ. R. 12(H). We disagree. "***The reason for requiring affirmative defenses to be pleaded is to avoid surprise at the trial.***" McCormac, Ohio Civil Rules Practice (1970), Section 7.14, at page 159. Obviously, there was no surprise here since all the facts bearing on this defense were fully set out in Chandler's original complaint. Moreover, even were this not true, Civ. R. 15(B) provides:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. Failure to amend as provided herein does not affect the result of the trial of these issues.***"

The trial court's written decision and the memoranda of the parties demonstrate that the issue of GMAC's duty to minimize damages was the issue tried. Chandler's failure to set out, in so many words, in his answer to the counterclaim, that

GMAC failed to minimize its damages is, therefore, under Civ. R. 15(B), without significance.

Coming then to the principal issue, the granting of GMAC's motion for summary judgment on its counterclaim, the question is whether the facts before the trial court raised the issue of minimization of damages or whether GMAC was entitled to judgment as a matter of law.

There can be no doubt that, whatever a defendant's wrong may be, a plaintiff has a duty to minimize damages. As stated in Williston on Contracts:

"The plaintiff's right is to recover such damages as the defendant's wrong necessarily caused him. It is usually said that the plaintiff is under a duty to mitigate damages. However, the truth seems rather to be that damages which the plaintiff might have avoided with reasonable effort without undue risk, expense, or humiliation are either not caused by the defendant's wrong or need not have been, and, therefore, are not to be charged against him." 11 Williston on Contracts (3 Ed. 1968), Section 1353, at page 274. See, also, *F. Enterprises* v. *Kentucky Fried Chicken Corp.* (1976), 47 Ohio St. 2d 154; 5 Corbin on Contracts (1964), Section 1039.

In considering the motion for summary judgment, the trial court had before it various affidavits and exhibits attached thereto and Chandler's deposition, taken as on cross-examination. These documents show that on July 28, 1976, Chandler purchased the automobile in question from Sweeney and executed an installment sales contract therefor on a form prepared by GMAC. The form was executed in quintuplicate, presumably so that all involved parties would have copies. The form consists of two tightly-printed, legal-size pages. It was signed by Sweeney and Chandler. Above their signatures the form states:

"Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto. * * *"

The form contains the standard provisions for acceleration in the event of default and for the seller's right to repossession, and, provides that in the event of repossession, the seller is to have such rights and remedies as are provided and permitted by law. The form sets out in detail provisions for assignment of the contract to GMAC.

The form provides for optional creditor insurance in the event of disability. The words "creditor insurance" appear three times. Chandler contracted for such creditor insurance in the event of his disability, and the premium of $173.79 was a part of the total obligation which he agreed to repay in 36 monthly installments of $136.76 each.

According to Chandler's deposition, he made all payments to GMAC, which apparently was assigned the contract by Sweeney at the time of its execution, until he was injured at work on May 5, 1977. Within two weeks after his injury, Chandler notified GMAC. Both he and his wife advised GMAC that they were processing the claim for disability insurance. Apparently, GMAC offered them no advice or assistance, and, did not even tell them about filing a claim.

Chandler also notified Sweeney who gave him a form of "claim statement." The first section of this form requires a statement by the creditor, *i.e.,* GMAC. The second section requires a statement by the insured (also referred to as the claimant); the third, by the physician; and, the fourth, by the employer. Chandler, acting on Sweeney's instructions, completed his (Chandler's) section of the form and had his employer and the doctor complete their sections. Chandler then took the form to GMAC. GMAC refused to assist him and refused to complete its section of the form. GMAC insisted that Chandler make full payment to them, or deliver the car, and told him that he should take up the matter of the claim with the insurance company himself. GMAC then proceeded, forthwith, to send a man to Chandler's residence; and, at this man's insistence, Chandler turned over the keys and the car to this man on June 20, 1977. On July 7, 1977, the automobile was sold by GMAC at a private sale, resulting in a deficiency of $1984, for which GMAC then made claim against Chandler.

It appears that the disability insurance was written with a company called Acceleration Life Insurance Company, pursuant to a group policy issued to Sweeney. Chandler knew nothing about Acceleration Life. No policy, or certificate, was ever issued to him. His only dealings were with Sweeney and GMAC. That the disability coverage was payable to GMAC is indicated by a check which was eventually issued to it for part of the period of time that Chandler was disabled. Chandler returned to work on September 6, 1977.

On these facts it is patent that there is a genuine issue of fact as to whether GMAC could not, with reasonable effort and without undue risk, have avoided the loss which it now seeks to place on Chandler's shoulders. Construing the facts most strongly in Chandler's favor, as required by Civ. R. 56(C), one could properly conclude that GMAC, through Sweeney, was party to the arrangements for disability insurance; that the obvious purpose of the insurance was to provide for payments to GMAC during any disability of Chandler; and, that in view of the relative strengths and abilities of the parties, GMAC had a duty to process the disability insurance claim, or at least to assist Chandler in doing so. It should be noted in this connection that the contract is completely silent as to who had the responsibility for collecting payments in the event of disability. Under the total circumstances of this transaction a buyer would have a right to conclude that the contract was one and indivisible and that the disability insurance was to provide installment payments to GMAC during any period of disability.

GMAC knew of Chandler's disability shortly after it occurred. However, GMAC not only did nothing to expedite the processing of the claim, but it also thwarted Chandler's efforts to see that GMAC received its payments by refusing to cooperate with him and by selling the automobile at a private sale before the claim could even be processed. Little risk was involved in securing the automobile until the disability claim could be handled. The effort to do so would certainly not have been unreasonable; and, if GMAC had done so, it might well have received payment in full. Accordingly, we conclude that a genuine issue of fact as to whether GMAC failed to minimize its damage was presented. The motion for summary judgment on the counterclaim was improvidently granted.

The decision of the trial court must, therefore, be reversed and the cause remanded for further proceedings according to law on the counterclaim.

*Judgment reversed*
*and cause remanded.*

PALMER and KEEFE, JJ., concur.