**AIRBORNE EXPRESS, INC., Appellee,**

v.

**SYSTEMS RESEARCH LABORATORIES, INC., Appellant.***

[Cite as *Airborne Express, Inc. v. Sys. Research Laboratories, Inc.* (1995), 106 Ohio App.3d 498.]

Court of Appeals of Ohio,
District Twelve, Clinton County.

No. CA94–10–026.

Decided Sept. 25, 1995.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1996), 75 Ohio St.3d 1411, 661 N.E.2d 759.

500

*Vorys, Sater, Seymour & Pease, Daniel J. Buckley* and *Andrew Kaplan,* for appellee.

*Martindale, Brzytwa & Quick, John E. Martindale* and *Margaret Mary Meko,* for appellant.

WALSH, Presiding Judge.

Defendant-appellant, Systems Research Laboratories, Inc., appeals a Clinton County Court of Common Pleas jury verdict in favor of plaintiff-appellee, Airborne Express, Inc., in a breach of contract action.

Appellee is an overnight package air freight company that utilizes a fleet of aircraft to operate its air freight service. Appellee, as an aircraft operator, is controlled by Federal Aviation Administration ("FAA") regulations.

In the early 1980s, the FAA enacted regulations designed to control the noise output from aircraft. The FAA developed a program involving three stages of noise suppression levels. When the noise suppression regulations were enacted, all aircraft were in the stage one phase. All aircraft had to comply with stage two noise levels by January 1986. However, aircraft operators could apply for a two-year exemption and keep flying aircraft in the stage one phase until January 1988. Appellee obtained a two-year extension; consequently, its deadline for stage two compliance was January 1988.

In order to comply with the stage two noise level required by the FAA, appellee purchased portions of Pratt & Whitney and McDonnell Douglas "hushkits" for installation on its aircraft.[1] However, as the stage two compliance deadline approached, the Pratt & Whitney and McDonnell Douglas hushkits became enormously expensive. Thus, appellee began investigating the possibility of designing and developing its own noise control device.

After designing and developing its own hushkit ("Airborne hushkit"), appellee entered into a contract with appellant, an applied research organization, to conduct the analysis and noise certification testing necessary for appellee to obtain a Supplemental Type Certificate ("STC") from the FAA for its hushkit.[2] The contract provided that appellant would perform a number of services, including comparing the noise level of the Airborne hushkit with the Pratt & Whitney hushkit, preparing a test plan, conducting noise measurement and evaluation tests, analyzing the data obtained as a result of the testing and preparing a test report to be submitted to the FAA.

The purpose of the testing was to obtain FAA approval of the Airborne hushkit pursuant to the requirements of Federal Aviation Regulations ("FAR") Part 36.[3] Appellee hoped to demonstrate that an airplane equipped with the Airborne hushkit was no louder than an airplane equipped with the Pratt & Whitney hushkit to aid in obtaining an STC from the FAA for its hushkit.

Appellant's test results indicated that the Airborne hushkit was equivalent to the previously FAA-approved Pratt & Whitney hushkit. Appellant included its test results and supporting data in a report dated December 1984 and submitted the report to the FAA. The FAA approved the test results based upon the data contained in appellant's report. On January 21, 1985, the FAA issued an STC which authorized use of the Airborne hushkit on aircraft.

After the issuance of the Airborne hushkit STC, appellee formed a wholly owned subsidiary known as Sound Suppression, Inc. ("SSI"). SSI entered into an agreement with appellant pursuant to which appellant was paid $1,000,000 to

---

1. A "hushkit" is a device placed in or around an airplane engine to reduce aircraft noise. The Pratt & Whitney and McDonnell Douglas hushkits had already been approved by the FAA and were available to aircraft operators.

2. In order to modify aircraft which have previously obtained FAA approval, an operator must apply for an STC from the FAA. The certification process is governed by Part 36 of the Federal Aviation Regulations ("FAR") and requires thorough analysis and testing, including noise measurement tests. Noise measurement tests must be conducted to ensure that a particular device sufficiently quiets the aircraft in order to meet FAA regulations.

3. According to the testimony of Richard White, retired head of appellant's experimental research and simulation department, appellant agreed that its analysis of the data obtained as a result of the testing would comply with the requirements of FAR Part 36.

manufacture one hundred Airborne hushkits at a price of $10,000 each. Appellee installed nine hushkits on its own airplanes and sold eleven hushkits to third parties.

In December 1986, appellee received a letter which stated that the FAA had completed a post-approval review of the Airborne hushkit STC and that it had mistakenly approved the Airborne hushkit. The letter stated that a review of the test report and supporting data prepared by appellant did not establish that aircraft modified with the Airborne hushkit complied with FAA noise level limits.

Several meetings were held in which appellant, appellee and the FAA attempted to rectify the problems with the data submitted in support of the Airborne hushkit STC. The FAA informed appellant and appellee that deficiencies in the data submitted in support of the STC rendered the measured aircraft data unusable. In addition, the data contained in the 1984 report submitted in support of the STC did not comply with FAR Part 36 requirements, and corrections which should have been made to the data were not completed. The position of the FAA was that if appellee could not correct the problems found in the data supporting the STC, procedures would be initiated to revoke the Airborne hushkit STC.

Appellee began exploring alternatives to the Airborne hushkit and developed a reduced flap setting which would enable aircraft to comply with stage two FAA-required noise levels.[4] Appellee applied for an STC for the reduced flap setting and in November 1987, appellee received a "flap STC" from the FAA.[5] Appellee removed the Airborne hushkits from its aircraft and replaced them with the flap STC. Appellee also began marketing and selling its flap STC to third parties for profit.

Appellee subsequently brought suit against appellant, asserting several causes of action arising out of the 1984 noise evaluation contract. The matter proceeded to a jury trial on appellee's breach of contract claim. Appellee sought damages in the amount of $1,798,223.[6] The jury rendered a verdict in favor of appellee in the

---

4. William J. Galloway, a retired consultant in the field of aircraft noise, testified that "[t]he flaps are generally the half part of a wing, or come out from underneath the wing * * * [and] are essentially extended into the air stream and used for landings." A reduced flap setting is a noise control device which is operated by the pilot of the aircraft. Essentially, the flap STC is a piece of paper which prohibits a pilot from using a flap setting greater than forty degrees.

5. When appellee obtained a flap STC from the FAA, it surrendered the Airborne hushkit STC to the FAA. Consequently, the FAA did not institute proceedings to revoke the Airborne hushkit STC.

6. Appellee sought $1,000,000 representing the purchase price of 100 hushkits from appellant, $112,649 representing the contract price which appellee paid appellant to conduct the noise

amount of $731,934 and judgment was entered by the trial court in that amount. It is from this judgment that appellant now appeals, setting forth the following assignments of error:

Assignment of Error No. 1:

"The trial court erred and abused its discretion in denying appellant's motion for directed verdict and judgment notwithstanding the verdict when there was no evidence causally linking appellant's alleged breach of contract with appellee's purported damages."

Assignment of Error No. 2:

"The trial court erred and abused its discretion in denying appellant's motion for new trial when the judgment is not sustained by the weight of the evidence."

Assignment of Error No. 3:

"The trial court committed prejudicial error when it granted appellee's motion in limine to exclude evidence of appellee's profits and benefits received from the sale of the flap STC and denied SRL's motion for new trial based upon this prejudicial exclusion of evidence."

Assignment of Error No. 4:

"The trial court committed prejudicial error in denying appellant's motion for new trial when the judgment is contrary to law because the jury did not properly follow the jury instruction regarding causation and improperly rendered a compromise verdict."

Assignment of Error No. 5:

"The trial court committed prejudicial error in denying appellant's motion for new trial when the trial court gave an erroneous jury instruction on real party in interest."

In its first assignment of error, appellant contends that the trial court erred in denying its motion for a directed verdict and judgment notwithstanding the verdict because there was insufficient evidence to establish that appellant's breach of the noise evaluation contract caused appellee's damages which resulted from the loss of its Airborne hushkit STC.

■ A motion for a directed verdict should be granted when, construing the evidence most strongly in favor of the party opposing the motion, the trial court finds that reasonable minds could come to only one conclusion and that conclusion is adverse to such party. Civ.R. 50(A)(4); *The Limited Stores, Inc. v. Pan Am.*

---

evaluation tests and prepare a report for submission to the FAA, and $685,574 representing prejudgment interest.

*World Airways, Inc.* (1992), 65 Ohio St.3d 66, 73, 600 N.E.2d 1027, 1033–1034. Conversely, the trial court must submit an essential issue to the jury when there is sufficient evidence relating to the issue, which, if believed, would permit reasonable minds to reach different conclusions. *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 220, 58 O.O.2d 424, 427, 280 N.E.2d 896, 899.

■ The record indicates that appellee hired appellant to accumulate data and prepare a test report to be submitted to the FAA. The contract provided that appellant would supply appropriate personnel and electronic equipment in order to obtain the required noise data that would be analyzed according to the requirements set out in FAR Part 36. The 1984 test report prepared by appellant concluded that based upon the test results contained in the report, the Airborne hushkit "should, therefore, be recognized as satisfying the [Federal Aviation Regulation] Part 36 noise regulations for DC9–30 series aircraft * * *."

At trial, appellee presented evidence that appellant breached certain provisions of the parties' contract and that the 1984 report prepared by appellant and submitted to the FAA contained deficient data and failed to comply with FAR Part 36. Appellant presented the testimony of James Densmore, retired FAA director of the office of environment and energy, and Dr. William Galloway, a retired consultant in the field of aircraft noise. Both Densmore and Galloway testified that the data submitted by appellant in support of its test report was deficient and did not comply with FAA regulations, and that the Airborne hushkit STC was incorrectly issued based upon such report. Edward Rickley, manager of the Department of Transportation's acoustics laboratory, processed the tape recordings and reanalyzed the data submitted by appellant in its test report. Rickley's report indicates that FAR Part 36 requirements were not followed and the tapes were contaminated by extraneous noise, rendering the collected data unusable.

Finally, Richard White, retired head of appellant's experimental research and simulation department, testified that although appellant agreed to analyze the data obtained as a result of the testing in accordance with FAR Part 36, appropriate electronic equipment was not used and certain necessary data had been incorrectly analyzed. The end result was that the post-approval review left the FAA with no valid data to support the issuance of the Airborne hushkit STC.

We find that, construing the evidence most strongly in favor of appellee, there is evidence in the record which, if believed, indicates that appellant's breach of contract caused the damages suffered by appellee. Such evidence could have formed the basis for the jury's finding in favor of appellee. Therefore, the trial court did not err in finding that there was sufficient evidence for the causation issue to go to the jury and denying appellant's motion for a directed verdict.

■ Appellant also argues that the trial court erred in denying its motion for a judgment notwithstanding the verdict. Motions for JNOV are governed by Civ.R. 50(B). The standard for granting a JNOV is the same as the standard for a motion for a directed verdict. *Nickell v. Gonzalez* (1985), 17 Ohio St.3d 136, 137, 17 OBR 281, 282, 477 N.E.2d 1145, 1147, citing *Ayers v. Woodard* (1957), 166 Ohio St. 138, 1 O.O.2d 377, 140 N.E.2d 401, paragraph one of the syllabus. In clarifying the law of JNOV motions, the Supreme Court has held:

" 'The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion [for JNOV] is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination * * *.' " (Emphasis deleted.) *Osler v. Lorain* (1986), 28 Ohio St.3d 345, 347, 28 OBR 410, 412, 504 N.E.2d 19, 21, quoting *Posin v. A.B.C. Motor Court Hotel* (1976), 45 Ohio St.2d 271, 275, 74 O.O.2d 427, 429–430, 344 N.E.2d 334, 338.

As previously discussed, we find that appellee presented sufficient evidence to support its claim that appellant's failure to properly perform the noise evaluation tests caused appellee damages resulting from the loss of its Airborne hushkit STC. Based upon a thorough review of the record and viewing the evidence in a light most favorable to appellee, we find that reasonable minds could reach different conclusions as to whether appellant's breach of contract caused appellee's damages. The trial court did not err in submitting the issue of causation to the jury and in denying appellant's motion for JNOV. Accordingly, appellant's first assignment of error is overruled.

In its second assignment of error, appellant contends that the trial court abused its discretion in denying its motion for a new trial because the judgment is against the manifest weight of the evidence. Appellant argues that there was insufficient evidence to support a causal relationship between appellant's breach of contract and the damages suffered by appellee.

■■ When reviewing a trial court's decision to deny a request for a new trial, an appellate court may reverse only if the trial court abused its discretion by denying the motion. *Rohde v. Farmer* (1970), 23 Ohio St.2d 82, 52 O.O.2d 376, 262 N.E.2d 685, paragraph one of the syllabus. An "abuse of discretion" connotes more than an error of law or judgment and indicates that the trial court's decision is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1141–1142.

■■ In ruling on a motion for a new trial based upon an insufficient evidence claim, the trial court must weigh the evidence and determine whether it appears

that a manifest injustice has been done and that the verdict is against the manifest weight of the evidence. *Rohde, supra,* paragraph three of the syllabus. A trial court's judgment is not against the manifest weight of the evidence when it is supported by competent, credible evidence. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410–411, 461 N.E.2d 1273, 1276.

The trial court found that in relation to the evidence and facts adduced at trial, the verdict was not against the manifest weight of the evidence and overruled appellant's motion for a new trial. After a careful review of the record, we find that appellee's claim that appellant breached the noise evaluation contract was supported by competent, credible evidence. Accordingly, the trial court did not abuse its discretion in denying appellant's motion for a new trial. Appellant's second assignment of error is overruled.

In its third assignment of error, appellant contends that the trial court erred in granting appellee's motion *in limine* to exclude evidence relating to profits made by appellee from the sale of the flap STC and in denying appellant's motion for a new trial based upon this exclusion of evidence. Appellant argues that the jury should have been permitted to hear testimony regarding the profits made by appellee from the sale of the flap STC in order to determine the amount of damages owed to appellee.

The ability of a trial court to entertain motions *in limine* lies within the court's inherent power and discretion to control the proceedings before it. *Rich v. Quinn* (1983), 13 Ohio App.3d 102, 105, 13 OBR 119, 122–123, 468 N.E.2d 365, 369–370. Absent an abuse of discretion, the trial court's ruling with respect to the admission or exclusion of evidence will not be disturbed on appeal. *LeForge v. Nationwide Mut. Fire Ins. Co.* (1992), 82 Ohio App.3d 692, 701, 612 N.E.2d 1318, 1324; *Burwell v. Am. Edwards Laboratories* (1989), 62 Ohio App.3d 73, 83, 574 N.E.2d 1094, 1100.

In this case, the trial court granted appellee's motion *in limine* to exclude evidence of profits made by appellee from the sale of the flap STC to third parties. The trial court found that the flap STC is a completely separate product and refused to allow the parties to introduce evidence of appellee's postmitigation gains, determining that such evidence was irrelevant. However, the trial court did permit the parties to introduce evidence of appellee's sale of the flap STC in mitigation of its damages resulting from the surrender of the Airborne hushkit STC.

As a general rule, parties to a contract are required to mitigate damages whenever possible. *Chandler v. Gen. Motors Acceptance Corp.* (1980), 68 Ohio App.2d 30, 32, 22 O.O.3d 18, 19–20, 91–92, 426 N.E.2d 521, 522–523; *Inner City Wrecking Co. v. Bilsky* (1977), 51 Ohio App.2d 220, 229–230, 5 O.O.3d

357, 362–363, 367 N.E.2d 1214, 1220–1221. A damage award should put the injured party in as good a position as it would have been in absent the breach of contract. *F. Enterprises, Inc. v. Kentucky Fried Chicken Corp.* (1976), 47 Ohio St.2d 154, 159, 1 O.O.3d 90, 93, 351 N.E.2d 121, 124–125. Damages recoverable by the injured party are not to be reduced by gains earned by the injured party on transactions unrelated to the breach of contract unless those gains could only have been made as a result of the breach. See *Kunkle v. Jaffe* (App.1946), 47 Ohio Law Abs. 77, 80, 71 N.E.2d 298, 299.

Appellee justifiably attempted to mitigate its damages caused by the mistaken approval by the FAA of the Airborne hushkit STC. Appellee developed the flap STC and placed it on its fleet in order to bring its aircraft into compliance with FAA regulations and in an effort to avoid further losses caused by the breach. Appellee also provided the flap STC to customers who had purchased the Airborne hushkit to enable those aircraft operators to comply with FAA regulations. The fact that appellee was able to profit from the sale of its flap STC to third parties is independent of appellant's breach of contract and appellee's efforts to mitigate its damages resulting from the breach. Appellant is not entitled to recoup any excess monies that appellee was able to secure from postmitigation sales of the flap STC. See, *e.g., Cleveland Indoor Soccer Co., Ltd. v. Haaskivi* (1992), 78 Ohio App.3d 750, 755, 605 N.E.2d 1315, 1318–1319.

Additionally, exclusion of evidence relating to appellee's postmitigation profits from the sale of the flap STC to third parties does not place appellee in a better position than it would have been in absent the breach of contract. The evidence offered to show that appellee would not have developed the flap STC in the absence of appellant's breach of contract is speculative. A review of the record indicates that appellee had considered the flap STC prior to the development of the Airborne hushkit. Furthermore, even if the Airborne hushkit had not been surrendered to the FAA, it is speculation to assume that the flap STC would not subsequently have been developed. Finally, there is no evidence to indicate that the development of the flap STC would have been impossible absent appellant's breach of the noise evaluation contract. See *Kunkle, supra.*

After carefully reviewing the record, we find that the trial court's decision to exclude evidence of appellee's postmitigation gains was not unreasonable, arbitrary or unconscionable. The trial court did not abuse its discretion in denying appellant's motion for a new trial based upon the exclusion of evidence pursuant to appellee's motion *in limine.* Accordingly, appellant's third assignment of error is overruled.

In its fourth assignment of error, appellant contends that the trial court erred in denying its motion for a new trial because the judgment is contrary to law. Appellant argues that the judgment is contrary to law because the jury did not

properly follow the trial court's instruction regarding causation and improperly rendered a compromise verdict.

In this case, the trial court instructed the jury as follows:

"Airborne Express [appellee] must prove to you by the greater weight of the evidence that:

"1.   Systems Research Laboratories [appellant] broke a promise that it made in the contract;

"2.   Airborne Express suffered losses for which it should be compensated; and

"3.   that the losses was [sic] actually caused by Systems Research Laboratories breaking of a contract promise."

"A presumption always exists that the jury has followed the instructions given to it by the trial court." *Pang v. Minch* (1990), 53 Ohio St.3d 186, 195, 559 N.E.2d 1313, 1322. We find no evidence in the record which would indicate that the jury failed to follow the instructions as given by the trial court. As discussed in connection with appellant's first and second assignments of error, we find that appellee presented sufficient evidence to support its claim that appellant's breach of contract caused appellee's damages. Such evidence is sufficient to support the jury's verdict in favor of appellee.

■ Appellant also contends that the judgment is contrary to law and a new trial is warranted because the jury rendered an improper compromise verdict. Appellant argues that the verdict bears no relationship to the amount of damages sought by appellee.[7]

■ The record indicates that appellee sought damages in the amount of $1,798,223. The trial court allowed the parties to introduce evidence of appellee's effort to mitigate its damages by developing and selling the flap STC after appellant's breach of contract. However, the trial court did not permit the introduction of evidence relating to appellee's postmitigation gains. The jury awarded appellee damages in the amount of $731,934. Subsequently, the trial

---

7. Also in support of its argument, appellant offers a statement made by one of the jurors to the editor of the Wilmington News–Journal following the trial. The juror stated that there was lengthy discussion among the jurors during their deliberations as to whether appellant breached the contract. We find this statement improper evidence with which to impeach the verdict in this case, pursuant to Evid.R. 606(B). There must be outside evidence from a competent source other than a juror to impeach a verdict. *State v. Rogers* (1990), 68 Ohio App.3d 4, 8, 587 N.E.2d 381, 384–385; *Nickell, supra,* 17 Ohio St.3d at 137, 17 OBR at 282, 477 N.E.2d at 1147. Appellant has not offered competent evidence with which to impeach the jury verdict in this case and we decline to consider the juror's statement in relation to appellant's argument.

court found that the jury's verdict was not a result of compromise and overruled appellant's motion for a new trial.

In considering whether a jury reached a compromise verdict, it is necessary to "examine the 'totality of circumstances' and consider any indicia of compromise apparent from the record and other factors that may have caused a verdict for damages that would be inadequate if the jury actually found liability." *Yarbrough v. Sturm, Ruger & Co.* (C.A.5, 1992), 964 F.2d 376, 379, citing *Pagan v. Shoney's Inc.* (C.A.5, 1991), 931 F.2d 334, 339. However, even if a compromise verdict has in fact been rendered, such verdict will be upheld on appeal where "[t]here is no evidence of passion, or prejudice or of wanton wrong" on the part of the jury. *Young v. Snow* (App.1923), 2 Ohio Law Abs. 473.

A review of the record indicates that sufficient evidence was presented on the issue of liability and causation to support the jury's verdict for appellee. In determining whether a jury's verdict was influenced by passion or prejudice, the court should consider the amount of damages returned and whether the record discloses that the verdict was induced by "(a) admission of incompetent evidence, or (b) by misconduct on the part of the court or counsel, or (c) whether the record discloses any other action occurring during the course of the trial which can reasonably be said to have swayed the jury in their determination of the amount of damages that should be awarded." *Fromson & Davis Co. v. Reider* (1934), 127 Ohio St. 564, 569, 189 N.E. 851, 853; *Slivka v. C.W. Transport, Inc.* (1988), 49 Ohio App.3d 79, 80, 550 N.E.2d 196, 198. Further, the mere size of the verdict is not proof of the jury's passion or prejudice. *Duren v. Suburban Community Hosp.* (C.P.1985), 24 Ohio Misc.2d 25, 29, 24 OBR 450, 454, 495 N.E.2d 51, 56. In order to indicate an influence of passion or prejudice, it must appear that the jury's award of damages would "shock reasonable sensibilities." *Id.*

In this case, the record does not disclose the admission of incompetent evidence, misconduct or other action which would sway the jury. The jury's verdict does not shock reasonable sensibilities and is not the result of passion or prejudice. After thoroughly reviewing the record, we find no abuse of discretion by the trial court in denying appellant's motion for a new trial based upon appellant's argument that the jury failed to follow the court's causation instruction and that the jury rendered a compromise verdict. Accordingly, appellant's fourth assignment of error is overruled.

In its fifth assignment of error, appellant contends that the trial court erred in denying its motion for a new trial based upon an erroneous jury instruction regarding real party in interest. Appellant argues that a new trial should be granted because appellee was permitted to assert damages in the amount of

$1,000,000, representing the amount paid for Airborne hushkits ordered from appellant pursuant to a purchase contract between SSI and appellant.

A "real party in interest" possesses a substantive right to relief under applicable law and is *"directly* benefitted or injured by the outcome of the case." (Emphasis *sic.)* *W. Clermont Edn. Assn. v. W. Clermont Local Bd. of Edn.* (1980), 67 Ohio App.2d 160, 162, 21 O.O.3d 457, 458–459, 426 N.E.2d 512, 514. See, also, *Barksdale v. Ohio Dept. of Adm. Serv.* (1992), 78 Ohio App.3d 325, 328, 604 N.E.2d 798, 800. In other words, the real party in interest is the party entitled to damages. *Young v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1993), 88 Ohio App.3d 12, 16, 623 N.E.2d 94, 96–97.

The trial court gave the following jury instruction regarding real party in interest:

"You have heard evidence about Sound Suppression, Inc., or 'SSI.' Airborne is the real party in interest in this case because it is the party who will be directly benefitted or injured by the outcome of the case. Consequently, you should view any actions or omissions taken by SSI as having the same effect as if Airborne, itself, had acted."

The record indicates that SSI is a wholly owned subsidiary of appellee. SSI did not have employees of its own and all its debts and expenses were paid by appellee. Additionally, appellee paid the contract price of $1,000,000 for the purchase of one hundred Airborne hushkits from appellant. When the FAA's post-approval review of the Airborne hushkits established that the Airborne hushkit STC was approved by mistake, appellee is the real party in interest who suffered the loss of having paid for hushkits which were essentially useless.

Consequently, the trial court did not err in instructing the jury as it did with respect to the real party in interest and did not abuse its discretion in denying appellant's motion for a new trial on such grounds. Appellant's fifth assignment of error is overruled.

The judgment is affirmed.

*Judgment affirmed.*

WILLIAM W. YOUNG and POWELL, JJ., concur.