[Cite as *Cocca Dev. Ltd. v. Mahoning Cty. Bd. of Commrs.*, 2013-Ohio-4133.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| COCCA DEVELOPMENT LTD. | ) | CASE NO. 12 MA 155 |
| | ) | |
| PLAINTIFF-APPELLANT | ) | |
| CROSS-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| MAHONING COUNTY BOARD OF | ) | |
| COMMISSIONERS | ) | |
| | ) | |
| DEFENDANT-APPELLEE | ) | |
| CROSS-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:          Civil Appeal from the Court of Common
                                   Pleas of Mahoning County, Ohio
                                   Case No. 07 CV 3005

JUDGMENT:                          Affirmed.

APPEARANCES:

For Plaintiff-Appellant/Cross-Appellee:      Atty. William A. Myers
                                             100 DeBartolo Place, Suite 400
                                             Boardman, Ohio  44512

For Defendant-Appellee/Cross-Appellant:      Atty. Paul J. Gains
                                             Mahoning County Prosecutor
                                             Atty. Gina DeGenova Bricker
                                             Assistant Prosecuting Attorney
                                             21 West Boardman Street, 6th Floor
                                             Youngstown, Ohio  44503

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Mary DeGenaro

                                             Dated:  September 16, 2013

WAITE, J.

{¶1} This case began seven years ago in a breach of contract complaint involving a commercial lease. In 2001, Appellant Cocca Development Ltd. entered into a 10-year lease with 7655, LLC to lease space in the Southwoods Executive Center ("Southwoods") in Boardman, Ohio. Appellee Mahoning County Board of Commissioners ("MCBC") is the successor in interest to 7655, LLC. The space was to be used by Mahoning County Educational Service Center ("MCESC"). At the time the lease was entered, MCBC was required by statute to provide space for MCESC. This statutory requirement was phased out in January of 2007, and later that year MCBC stopped paying rent on the leased premises. In August, 2007, MCESC entered into a new 10-year lease with Appellant for a different space in Southwoods. Appellant then sued MCBC for breach of the 2001 lease. The trial court ruled in favor of MCBC, but on appeal we held that MCBC did breach the lease, and the case was remanded to determine damages and any mitigation of damages. *Cocca Dev. v. Mahoning Cty. Bd. of Commrs.*, 7th Dist. No. 08 MA 163, 2010-Ohio-3166 (hereafter "*Cocca I*").

{¶2} On remand, the trial court ruled that the value of the remaining portion of the 2001 lease was $1,172,393.22. The court also ruled that Appellant had mitigated its damages by entering into a new lease with MCESC in 2007. The remainder of the 2001 lease and the first part of the 2007 lease overlapped by approximately 40 months. This 40-month period was valued at $625,439.89, and this amount was deducted from the total damage award of $1,172,393.22, leaving a net

damage amount of $546,953.33. Both parties appeal the judgment of the trial court regarding its calculation of damages.

**{¶3}** Appellant argues that the 2007 lease between Appellant and MCESC should not serve to mitigate damages, as it was a contract for separate premises with a third-party tenant. Appellant contends that it acted with all reasonable commercial practicability to attempt to mitigate damages regarding the space described in the 2001 lease, but no tenant was found for that specific space. Appellant does not believe that a lease (it describes as unrelated), for a different space in the same building, should act to reduce the damage award.

**{¶4}** Appellee argues on cross-appeal that all of its damages were successfully mitigated, because the 2007 lease will generate more money than the 40 months of the 2001 lease that were left unpaid after that lease was breached. Appellee further argues that to allow Appellant to receive any amount in damages would leave it in a better position than it would have under the original agreement. Appellee concludes that the trial court erred in awarding any amount of damages.

**{¶5}** Both parties are incorrect. The issue on remand was the calculation of damages, which includes a consideration as to whether the damages were mitigated in some degree. Since the 2007 base with MCESC overlapped the last 40 months of the 2001 lease, and the 2007 lease was for similar premises with the same occupant, the court found that part of the 2007 lease should be applied in mitigation of damages. The court did not use the entire value of the 2007 lease to mitigate damages because it covered a considerable period of time after the 2001 lease was

to have expired. The period of time used by the trial court corresponds to the current law regarding mitigation of damages in Ohio in cases involving breach of a commercial lease. The judgment of the trial court is affirmed.

## BACKGROUND

**{¶6}** The facts of this case are undisputed and are set forth in *Cocca I*. In order to discharge a statutory duty imposed by R.C. 3319.19, MCBC entered into a contract with Appellant to rent property located at Southwoods to provide office space for MCESC on February 15, 2001. The lease agreement contained the following clause:

> The Premises **shall** be occupied and used for the general office
> purposes of the **Mahoning County Educational Service Center and**
> **for no other purpose**. (Emphasis sic.)

(Appellee's Brf., p. 2.)

**{¶7}** The contract was to run for ten years, until February 15, 2011, with an option of renewal in increments of five years. *Cocca I* at ¶7. MCESC did not sign this lease and was not directly liable for rent due on the premises, but was the beneficiary of the lease.

**{¶8}** R.C. 3319.19 contains a provision gradually phasing out MCBC's duty to pay for leased space for MCESC. The phase-out period was scheduled to conclude in January of 2007. On December 27, 2006, then Mahoning County Administrator George Tablack advised Rich Denamen, Superintendent of MCESC, that MCBC would no longer provide free office space and that if it wished to remain in

its current space, it would have to assume payments for the lease on their location beginning January 1, 2007, or vacate within thirty days. MCESC did not immediately vacate the premises, but did reimburse Appellee for rent due until it vacated. On July 13, 2007, MCESC entered into a new lease directly with Appellant. The lease was for a ten year period, ending in 2017. This new lease was for another space in the same building, rather than in the same office that was the subject of the 2001 lease. In August, 2007, MCESC moved to its new space. Soon afterward, MCESC ceased to pay rent for the office subject to the 2001 lease.

{¶9} On August 16, 2007, Appellant filed its complaint against Appellee MCBC, and the trial court entered summary judgment in favor of Appellee. The trial court found that there was no breach of contract as the contract was void for failure to contain a clause which would allow Appellee to terminate the lease with 60 days prior notice, which is a requirement of Ohio's competitive bidding statutes. *Cocca I* at ¶5.

{¶10} On appeal, we held that there was an enforceable contract and that it was not voided under Ohio's competitive bidding statute. *Id.* at ¶32. We held that the absence of the termination clause did not invalidate the contract as the termination clause was not an essential term. *Id.* at ¶32. Further, the drafter of the document was Appellee. Thus, all ambiguities were drawn in favor of the non-drafting party. This further supported the exclusion of the termination clause. *Id.* at ¶31.

{¶11} We also determined that there was insufficient evidence to make any specific ruling regarding Appellant's damages. Hence, the case was remanded to determine damages. We did, however, address the matter of mitigation:

> Finally, it is important to note that, in Ohio, a lessor has a duty to mitigate damages caused by a lessee's breach of a commercial lease if the lessee abandons the leasehold. The lessor's efforts to mitigate must be reasonable, and the reasonableness should be determined by the trial court. It appears on the record that Appellant mitigated their damages, at least in part, insofar as MCESC executed a lease with Appellant on July 19, 2007 for separate office space at Southwoods, but enough facts do not appear of record for this Court to make any final determination on the issue of damages. Therefore, the matter must be sent back to the trial court. (Internal citations omitted.)

*Id.* at ¶55.

{¶12} On remand, both Appellant and Appellee moved for summary judgment. The trial court determined that the value of the 2001 lease for the period October of 2007 to February of 2011 was $1,172,393.22. The trial court also found that the value of the 2007 lease for the period October of 2007 to February of 2011 was $625,439.89. The trial court entered its decision on August 8, 2012, in favor of Appellant, but reduced the damages because they were mitigated in the amount of $625,439.89, the lease amount from the first 40 months of the 2007 lease. The final damage award was $546,953.33, plus interest. Appellant filed its appeal on August

23, 2012. On August 28, 2012, Appellee filed a cross-appeal. Both parties agree that all of the facts and information necessary to determine damages were before the trial court. There is one assignment of error on appeal, and one cross-assignment of error.

## ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED IN REDUCING ITS JUDGEMENT FOR UNPAID RENT BY THE AMOUNT OF RENT PAID BY ANOTHER TENANT OF OTHER PREMISES IN THE SAME BUILDING.

{¶13} This appeal is from a trial court judgment resolving competing motions for summary judgment. An appellate court conducts a *de novo* review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.,* 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). When a court considers a motion for summary judgment, the facts must be taken in the light most favorable to the nonmoving party. *Id.*

**{¶14}** "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id.* at 293. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence that suggests that a reasonable factfinder could rule in that party's favor. *Brewer v. Cleveland Bd. of Edn.,* 122 Ohio App.3d 378, 386, 701 N.E.2d 1023 (8th Dist.1997).

**{¶15}** Both parties cite to *F. Enterprises, Inc. v. Kentucky Fried Chicken Corp.*, 47 Ohio St.2d. 154, 351 N.E.2d 121 (1976), in which, the Ohio Supreme Court held:

> [T]he injured party is only entitled to a damage award which places him in as good a position as he would have been had the contract been fully performed.

*Id.* at 159.

**{¶16}** The parties agree that Appellant had a duty to mitigate its damages, citing to *Frenchtown Square Partnership v. Lemstone, Inc.*, 99 Ohio St.3d 254, 2003-Ohio-3648, 791 N.E.2d 417. In *Frenchtown Square*, the Ohio Supreme Court held that a landlord of a commercial premises has an implied duty to mitigate its damages

when the tenant breaches the lease through abandonment. *Id.* at ¶16. The efforts to mitigate need only be reasonable, not extraordinary, and the reasonableness of the efforts to mitigate should be determined by the trial court. *Id.* at ¶17, 21.

**{¶17}** There is no question that Appellant was entitled to the profit it expected as if Appellee had fully performed on the lease through February 15, 2011. *F. Enterprises, Inc.*, *supra*, at 159. Appellant had an expectation of $1,172,393.22 in profit on the remainder of the 2001 lease after MCBC stopped its monthly payments. Appellant also had a duty to mitigate its damages. Since the duty to mitigate is implied in all contracts, including commercial leases, Appellant need not to have intended to mitigate its damages. *Dennis v. Morgan*, 89 Ohio St.3d 417, 419, 732 N.E.2d 391 (2000). The court simply examines whether reasonable efforts were, in fact, made to mitigate damages. There is no indication that the 2007 contract was unreasonable. Since Appellant did not rent out the identical space described in the 2001 lease, the court was left to use reasonable means to calculate mitigation of damages using the facts of the case. It was apparent that the purpose of the 2007 lease was identical to that of the 2001 lease, so it was reasonable for the trial court to take those facts into consideration when it calculated the mitigation of damages. This is particularly true since the occupant in the 2001 lease was MCESC, and the relevant occupant for purposes of mitigation was also MCESC.

**{¶18}** Appellant contends that nothing should have been deducted from the total damages award of $1.7 million because the 2007 lease was for a different space in the complex and, technically, involved a different lessee. Although MCESC

was the beneficiary of the 2001 lease, it was not actually paying the rent. It was, however, the stated occupant of the space that was being paid for by MCBC. In support, Appellant cites to *Kunkle v. Jaffree*, 47 Ohio Law Abs. 77, 78, 71 N.E.2d 298 (8th Dist.1946). The Eighth District Court of Appeals held that a real estate broker was under no obligation to mitigate his damages after the prospective buyer refused to finalize the sale of a commercial premises. *Kunkle* is inapplicable for several reasons, but primarily because it was not a breach of contract case, but rather, involved the timing, vesting and calculation of brokerage fees. *Id.* at 301.

{¶19} Appellant also relies on the fact that Appellee continued paying rent on the MCESC lease through September, 2007, even though MCESC signed for its new lease in July. Appellant contends that this is proof that all of the parties treated the two leases as completely separate transactions, and thus, the second lease should not be used to mitigate the damages of the first lease. We find this argument unconvincing. In July of 2007, MCESC advised Mahoning County Administrator, George Tablack, "that it would be vacating its office space at Southwoods effective August 31, 2007." (Appellee's Brf., pp. 2-3.) At this time, Appellee was unaware that MCESC had secured other offices within the Southwoods building. Appellee's payment of rent for September in no way proves that any of the parties treated the leases as completely unrelated transactions. The parties were aware of the statutory change in January, 2007, and that accommodation would need to be made due to the statutory change. While there was a slight overlap in which both leases were being paid, it would not be reasonable of Appellant to expect to have the same

occupant in two separate spaces, with both continuing to generate rent. It was reasonable of the court to take that into account when determining damages.

{¶20} Thus, the $1,172,393.22 in damages that arose from abandonment of the remainder of the 2001 lease were properly mitigated by the amount of money realized from the 2007 lease contract between October, 2007 and February 15, 2011: $625,439.89. Appellant is to recover the $546,953.33 it expected to earn for the remainder of the 2001 lease, through February 15, 2011. Therefore, we overrule Appellant's sole assignment of error.

<u>APPELLEE'S CROSS-ASSIGNMENT OF ERROR</u>

THE TRIAL COURT ERRED WHEN IT FAILED TO GIVE MAHONING COUNTY AN OFFSET FOR ALL MONIES PAID TO COCCA BY THE MAHONING COUNTY EDUCATIONAL SERVICE CENTER UNDER ITS 2007 LEASE AGREEMENT WITH COCCA DEVELOPMENT.

{¶21} Appellee argues that injured parties are not allowed to benefit from fortuitous breaches which lead to gains, and which could only be made as a result of the breach, citing *Airborne Express, Inc. v Sys. Research Laboratories, Inc.*, 106 Ohio App.3d 498, 508, 666 N.E.2d 584 (12th Dist.1995). Appellee contends that Appellant should not be permitted any additional profit at all from the 2007 lease with MCESC because that new lease would not have been entered absent the breach by MCBC. Appellee argues that since the value of the 2007 lease is approximately $1,768,534.20, and the damages stemming from the breach of the 2001 lease,

excluding mitigation, are only $1,172,393.22, Appellant has suffered no loss and thus no damages should have been awarded.

**{¶22}** Appellee's argument is not convincing. Rents payable under a new lease beyond the period of the lease in default for which the defaulting tenant was liable are not considered in calculating damages: "the proper test for compensation is the difference between the total rent agreed upon and the total rent received *for the unoccupied term of the lease* from subsequent tenants[.]" (Emphasis added.) *The Way Intern. v. Ohio Center*, 3 Ohio App.3d 451, 445 N.E.2d 1158 (10th Dist.1982), paragraph two of the syllabus. In *Strip Delaware LLC v. Landry's Restaurants, Inc.*, 2011-Ohio-4075, the Fifth District Court of Appeals refused to extend its mitigation set-off to the amounts that would be earned beyond the end of the original lease. In *Strip Delaware LLC*, after the default of Joe's Crab Shack on its rent, the landlord managed to find a new tenant to occupy the lease for a term that extended beyond the original tenant's term. *Id.* at ¶27. The Fifth District Court of Appeals refused to treat increased rent from the reletting of the property for the extended term as an improper windfall to the landlord. *Id.* at ¶26. The court further reasoned that consideration of future rent due would involve speculative evidence, which is not favored in Ohio courts. *Id.* at ¶27; *see also Middletown v. McGee*, 39 Ohio St.3d 284, 286, 530 N.E.2d 902 (1988). Therefore, the only amount properly considered for purposes of mitigation was the amount of rent earned from the time of the breach until the time the original lease expired.

**{¶23}** It is true that Appellant would not have entered into the 2007 lease with MCESC had the 2001 lease been fully performed, because that lease was not set to expire until 2011. This does not mean that the replacement lease somehow became a windfall for Appellant, or that it is more beneficial than what would have occurred had MCBC not breached the lease. If we were to speculate, we must note that the 2001 lease contained a clause that allowed the parties to possibly renew the lease, at least until 2016. The record clearly evidences that the breach of that lease in 2007 caused Appellant an immediate loss of income of almost $1.2 million. Appellant was required to take reasonable measures to try to mitigate these damages. Appellant took a course of action that involved accepting substantially less money per year on a new lease with MCESC. Appellant was earning over $29,000 per month on the 2001 lease, and less than $15,000 per month on the 2007 lease, using the trial court's figures. Even if we ignore the renewal clause in the 2001 lease, instead of being a windfall for Appellant, the 2007 lease clearly represented a loss in profits when compared to the actual value of the 2001 lease.

**{¶24}** As earlier discussed, Appellant is entitled to any profits that would have been realized through the end of the 2001 contract. Even though the 2007 contract will last beyond February 15, 2011, the end date of the 2001 contract, all profits realized after February 15, 2011, are part of a new transaction and do not act to mitigate damages from the breach of the 2001 lease.

**{¶25}** The only monetary amount that may properly be considered towards mitigation of Appellant's damages is money earned during the period of overlap

between MCESC's 2007 leasehold period when they began to pay rent directly, and Appellee's remaining period on the 2001 lease. This is the period between October of 2007 and February of 2011. Therefore, Appellee's cross-assignment of error is overruled.

## CONCLUSION

**{¶26}** The trial court did not err in its determination of mitigation of damages. Appellant was owed $1,172,393.22 for the remainder of the 2001 lease. The value of the 2007 lease mitigates Appellee's breach from the point of breach in October, 2007, until the end of the 2001 lease period on February 15, 2011. The value of the 2007 lease for this 40-month overlap amounts to $625,439.89. This leaves net damages in the amount of $546,953.33, plus interest at the statutory rate from April 11, 2011. Any profits to Appellee realized after February 15, 2011, should not serve to mitigate damages, as such profits are unrelated to the original breach. The trial court used the correct facts and calculations in determining its award of damages, and thus, the decision was correct. Therefore, we affirm the judgment of the trial court.

Donofrio, J., concurs.

DeGenaro, P.J., concurs.